THE CITY OF BOSTON, PLAINTIFF IN ERROR, *v.* DAVID R. LECRAW.

By the old laws of Massachusetts, a littoral proprietor of land owned down to low-water mark; subject, however, to the condition that, until he occupied the space between high and low-water mark the public had a right to use it for the purposes of navigation.

The city of Boston had the same right as other littoral proprietors, and consequently had the control over a dock which was situated between two wharves; one end of the dock being at high-water mark, and the other at low-water mark. It had, therefore, the right to construct a sewer for the purpose of carrying off the drainage from the high water, to the low-water end of the dock.

The city had not dedicated the dock to public uses by merely abstaining from any control over it. The principles which regulate a dedication to public uses, examined.

Although the presumption of such a dedication is a question of fact for the jury, yet it is for the court to instruct them what facts, if proved, will justify such a presumption.

THIS case was brought up, by writ of error, from the circuit court of the United States for the district of Rhode Island.

It was a suit originally commenced in the circuit court of the United States for the district of Massachusetts, and removed into the circuit court of Rhode Island, upon the ground that Mr. Justice Curtis was so connected with the plaintiff as to render it, in his opinion, improper for him to sit in the trial of the suit; and that Judge Sprague was an inhabitant of Boston, and concerned in interest in this cause, so as to render it, in his opinion, improper for him to sit in the trial thereof. It was therefore ordered, (both judges concurring,) that an authenticated copy of the record and all proceedings in the suit, should be certified to the circuit court of Rhode Island.

Lecraw, a citizen of New Hampshire, as surviving partner of the firm of Lecraw and Perkins, brought an action on the case against the city of Boston, for erecting a public nuisance, which was specially injurious to the plaintiff.

Lecraw was in possession of a wharf estate, situated in the southerly side of Boston. His wharf extended to the sea, and was entirely unobstructed at the end seaward. Along the southerly side of the wharf there was a dock about thirty feet wide, extending from the end of Summer-street to the sea. In July, 1849, the board of health ordered a drain, or sewer, to be constructed, from one end of the dock to the other, so as to carry the drainage out to deep water. It was constructed as follows: The obstruction complained of, as appeared by the evidence, was a drain composed of plank and timber, 460 feet long, eight feet wide, and eleven feet high to top of piles, and resting upon the surface of the mud in the dock, which ex-

tended from the head of the dock to within ———— feet of the foot of the same, and at the end of said drain was seventeen feet from the plaintiff's wharf, on the north, and thirty-two feet from the other wharf, on the south.

For this obstruction to the approach of vessels to his wharf, Lecraw brought his action, and upon the trial of the cause the jury found a verdict in his favor, assessing the damages at $9,280.

The bill of exceptions taken by the defendant included all the evidence and the numerous prayers offered to the court, which are sufficiently noticed in the opinion of this court.

The case was argued by *Mr. Ames* and *Mr. Chandler,* for the plaintiff in error, and by *Mr. Tilton* and *Mr. Durant,* for the defendant.

The briefs on both sides were very voluminous, and it is not possible to do more than state the positions assumed by the counsel respectively.

The counsel for the plaintiff in error endeavored to establish these positions as matters of law, or matters of fact deduced from the evidence. Each one of them was sustained by numerous references.

1. The whole territory of Boston was originally granted to and held by the town, which made grants thereof from time to time to such persons and on such conditions as it deemed expedient.

2. The city of Boston as successor of the town, now owns the fee in this dock, and the title to the estates on each side of it is derived from the town.

The wharf in possession of the plaintiff as lessee, is known as the Bull wharf.

The wharf on the other side of the dock is known as the Price wharf.

The title of both wharves is derived from the town of Boston.

3. It thus appears, that the dock between these wharves has been recognized by all parties, including the plaintiff's lessor, as the property of, and under the control of, the city of Boston.

4. This place has been used for the purposes of drainage beyond the memory of man, the common sewer in Summer-street entering at the head of it, and emptying its contents therein.

5. The town has always exercised control over this dock.

Upon these positions the counsel for the plaintiff in error made the following points: —

1. It was error in the court below, to rule that the plaintiff was entitled to recover of the city of Boston, damage- for the

act of the board of health of said city. The action was not properly brought, and cannot be maintained against the defendant corporation.

2. The structure, which the plaintiff alleges to be a public nuisance in a public dock, was erected by the board of health in the performance of a duty imposed upon them by law. The act was performed in good faith, for the preservation and protection of the public health, without negligence, and was lawful in itself. Such proceeding, if prejudicial to the interest or use which any individual may have before enjoyed in said dock, affords no ground of action, but is *damnum absque injuria*, and the judgment and decree of the board of health, not being impeached, are conclusive of the necessity of the structure.

3. If the *locus* was a public dock, slip, or way, which all the public had a right to use as a public dock, this fact did not vest in the owners of the adjoining wharves or flats any right whatsoever to use it for any other purpose than as a passage-way in boats or vessels to and from other portions of Summer-street, in common with other citizens of the commonwealth; and the plaintiff having no peculiar right, easement, or privilege therein, has no claim for damages in a civil suit, for any obstruction thereof.

4. Inasmuch as the plaintiff below set up a dedication of the *locus* as a public dock, the nature of the dedication, if any, and the character of the dock thence derived, were questions of fact for the jury, and they should have been cautioned, that, considering " the rights of the owners of flats in the same as long as the owner leaves such flats open and uninclosed, under the law of Massachusetts, there must be some plain and explicit declaration by the owner of flats that he doth dedicate the same to public use, as a public dock, quay, or waterway, in order that the jury should find that the same were thus dedicated, and that the use of the same for passage or laying of vessels is no evidence of claim of such flats, as a public dock, quay, or way, by the public, and is no evidence of their acceptance of such dedication."

5. The selectmen of Boston, acting under the express authority of law, as early as 1710, authorized the construction of a common sewer in Summer-street. In 1728, they authorized Vassall, and the deacons of the old church, to lay a drain through this street, " down to the sea." In 1804, the sewer was relaid " through Summer-street to the sea," and the expense was apportioned upon the inhabitants benefited, by the selectmen, according to law.

At various periods between 1710 and the present time, the existence of this drain has been recognized, and its repair ordered, and, in 1840, it was relaid by the city authorities.

The counsel for the defendant in error made the following points, each one of which, together with its numerous subdivisions, was sustained by a great number of authorities, which there is not room to transcribe : —

I. The first point made by the plaintiffs in error, namely, that the city are not liable, as a corporation, for the acts complained of, is not open to them upon this record. No such point was raised or exception taken before the circuit court; on the contrary, it was admitted that the city were responsible if the acts were illegal.

II. As the case was submitted to the jury, three facts were to be found by them, and are now to be taken as established.

1. The dock was a public dock.

2. The structure complained of was a public nuisance.

3. The defendant in error suffered peculiar and special damages, not common to, and much greater than the public in general suffered.

The case of the defendant in error rests upon this foundation. The dock was a public dock, which he had the right to use; the city destroyed that right by a public nuisance.

The city now set up the justification that their own common sewer, which was exclusively under their own control, created a nuisance in this dock, and that, by way of abating the nuisance, they built a drain through the dock, which destroyed it.

For this act they say there is no redress.

To this justification the following objections are made : —

1. It was not in the power of the State to authorize any city to do the acts complained of, without making compensation.

2. The powers given to the city, (Rev. Stat. ch. 21, § 9,) are "to destroy, remove, or prevent nuisances." Under this delegated authority to exercise the sovereign right of the State to regulate by health and police measures the use of property, the city seek to exercise another sovereign right of the State, namely, the power to authorize erections within navigable waters.

3. No such power as is claimed was ever intended to be given to the board of health, or to be exercised in the manner in which it was exercised.

The power given is to "remove, abate, and prevent nuisances." Under this power, the general right is claimed to destroy property and erect and maintain permanent structures, without making compensation, and in this particular case, the right to erect and maintain a public nuisance in the harbor of Boston.

4. The extraordinary powers claimed for the board of health would be contrary to the provisions of the constitution of Massachusetts.

5. But if the act of laying the drain were not unlawful, or the

subject of an indictment, still, the city must make compensation, because the damages were not consequential merely, but were directly occasioned by the destruction of a legal right.

III. The court properly ruled that the action could be sustained if the dock was a public dock, and the use of it was destroyed by a public nuisance, which cut off all access to the sea, and occasioned to the defendant in error peculiar and special damages, not common to and much greater than the public in general suffered.

IV. The court did rule that the use of the flats for passage or dockage was not sufficient evidence of dedication.

The fact of dedication may be proved in various ways; no particular declaration of the owner is requisite, and no particular form is necessary. Godfrey v. City of Alton, 12 Illinois, 29, 35; Kennedy's Executors v. Jones, 11 Ala. 63, 82; Le Clercq v. Gallipolis, 6 Hammond, 354; Best on Presumptions, § 101.

V. The plaintiffs in error apparently claim the right to create the public nuisance in question, upon two other distinct grounds of private right or title.

1. That they had the right to place a drain there, because the dock had been dedicated to the city as a place for drainage.

2. That the dock had been laid out as a street, and the city, therefore, had the right to put a drain there, although they had never made the street.

Upon the question of a right to place a drain in the dock.

1. The rights of drainage claimed by the city cannot be maintained, because, if any right of drainage into the dock existed before 1834, it was a right of individuals, not of the town or city. Before 1834, the town or city had no rights in, or control over, the sewers and drains. They were wholly built and owned by individuals. For the history of the legislation upon this subject, see Boston v. Shaw, 1 Met. 130.

2. If the city had any right to use the dock for an ancient drain, they had no right to enlarge and change the character and structure of the drain. Cotton v. Pocasset Manufacturing Co. 13 Met. 429.

3. If the dock had been dedicated as a place for the discharge of a drain, that would not justify taking the dock as a place for the drain itself, nor creating a public nuisance in it.

Upon the rights claimed to place a drain in the dock, on the ground that it was a street.

1. The defence now set up by the city, that the place in dispute was a street, and that the city, therefore, had a right to construct a drain, cannot be sustained, because the jury have found it to be a public dock.

2. Nor could the city, in the court below, defend themselves upon this ground.

3. By the laws of Massachusetts, a highway or street cannot be laid out over the flats between high-water mark and low-water mark. Commonwealth v. Coombs, 2 Mass. 489; Hood v. Dighton Bridge, 3 Ib. 263; Arundel v. McCulloch, 10 Ib. 70; Kean v. Stetson, 5 Pick. 492; Commonwealth v. Charlestown, 1 Ib. 180; Charlestown v. Middlesex, 3 Met. 202; Henshaw v. Hunting, 9 Cush. 203.

This was conceded by the counsel for the plaintiffs in error to be the law of Massachusetts, and they even sought to extend it to the case of a dock. Ruling 1, p. 78.

4. As the structure was a public nuisance, such a use of the flats can in no view of the case be justified. By Parker, C. J., Commonwealth v. Charlestown, 1 Pick. 180, 184; Brower v. The Mayor, &c. of New York, 3 Barb. 254, 258.

5. As the structure cut off all access to the sea, it cannot be justified under a right to make a street or any other right. Frink v. Lawrence, 20 Conn. 117; Shaw et al. v. Crawford, 10 Johns. 236; Cox v. The State, 3 Blackford, 193.

6. If a street had been made to the water, that very act gave the public the right to use the water and the dock beyond the street. Godfrey v. City of Alton, 12 Illinois, 29, 36, 37; Rowan's Executors v. Portland, 8 B. Monroe, 232, 242; Kennedy's Heirs v. Covington, 8 Dana, 50, 61; City of Louisville v. Bank of the United States, 3 B. Monroe, 138, 144, 157.

7. If the city had the right to build a street, it would be because the public convenience and necessity required a public street for tra .l.

The orders of the mayor and aldermen to make a drain through the dock, cannot be justified on the ground that the city had the right to make a different structure, namely, a street.

Mr. Justice GRIER delivered the opinion of the court.

The defendant in error, a citizen of New Hampshire, instituted this suit against the city of Boston, charging it with the erection of a public nuisance which was specially injurious to the plaintiff. The declaration contains seven counts. As the jury, under the instructions given by the court, gave a verdict for the plaintiff below on the last two only, it will be unnecessary to notice the others, or the points of law applicable to them.

These counts set forth, in substance, that in the year 1849 the plaintiff and a partner, since deceased, carried on the business of buying and selling wood and coal in Boston, and were in possession of a wharf known as the Bull wharf; that the dock forming the southerly boundary of said wharf, and extending from Summer-street wharf, was a part of the harbor of Boston,

and a public dock, slip, or way, navigable by vessels, and over which the waters of the sea ebbed and flowed, and by reason thereof the plaintiff ought to have been allowed to pass and re-pass as over a navigable highway with boats and vessels, over and through said dock from the wharf by him possessed to the channel of the sea; that defendant had erected piles and a drain in the dock, to the destruction of the navigation therein, and the special injury of the plaintiff.

A congeries of points or prayers of instruction, exceeding thirty in number, and covering nearly as many folios, were sub-mitted to the court, some of which were given as prayed for, some with "qualifications," and many refused.

If a judge, in answering such a mass of hypothetical and ver-bose propositions, should occasionally contradict himself, or fall into an error; or if the jury, instead of being instructed in law, should be confused and misled, it may be considered the legiti-mate result of such a practice. We do not think it necessary therefore, to examine particularly each one of this labyrinth of propositions; but, after a brief history of the title of the parties, and the admitted facts of the case bearing on its merits, we will state the law as applicable to them, and thus be enabled to test the correctness of the charge of the court in the instructions given or refused.

The original charters to the Plymouth company of that part of the territory which afterwards constituted the colony of Mas-sachusetts, conferred on them not only the property in the land, but all the "franchises, loyalties, liberties, &c., and the requisite civil and political powers for the government of the colony."

By the common law of England, the right of littoral proprie-tors, bounding on public navigable waters, extended to high-water mark only. But by an ancient ordinance, usually denomi-nated the ordinance of 1641, § 3, it is declared, "that in all creeks, coves, and other places about and upon salt water, where the sea ebbs and flows, the proprietor of the land adjoining shall have propriety to the low-water mark, where the sea doth not ebb above a hundred rods, and not more wheresoever it ebbs further: Provided, that such proprietors shall not by this liberty have power to stop or hinder the passage of boats or other ves-sels in or through any sea, creeks, or coves, to other men's houses or lands."

This is the foundation of what may be called the common law of Massachusetts on this subject. By it the grantee of land bounding on navigable waters where the tide ebbs and flows, acquires a legal right and a vested interest in the soil of the shore between high and low-water mark, and not a mere in-

dulgence or gratuitous license, given without consideration, and revocable at the pleasure of the grantor.    See Austin v. Carter, 1 Mass. Rep. 231, and Commonwealth v. Alger, 7 Cush. 71.

As a consequence of such ownership, it is ruled that the proprietor of the land bounding on tide-waters has such a propriety in the flats to low-water mark, that he may maintain trespass, *quare clausum fregit*, against one who shall enter and cut down piles placed there by the owner, with a view to build a wharf or otherwise inclose the flats.   But the right of the littoral proprietor under the ordinance has always been subject to this rule: that until he shall build upon his flats or inclose them, and whilst they are covered with the sea, all other persons have the right to use them for the ordinary purposes of navigation; so long as the owner of the flats permits the sea to flow over them, the individual right of property in the soil beneath does not restrain or abridge the public right.   7 Cush. 75.   This property is also subject to certain restrictions in its use, so that the State, in the exercise of its sovereign power of police for the protection of public harbors, and to prevent encroachments therein, may establish lines, and restrain and limit this power of the owner over his own property.

The whole territory now occupied by the city of Boston was originally granted to and held by the town, which made grants thereof from time to time, to such persons, and on such conditions as it deemed expedient; and the city of Boston, as successor to the town, continues to own such portions of the original territory as have not been sold or otherwise disposed of. But, while it acknowledged the rights of its vendees of lands adjoining the shore to wharf out opposite their respective lots, by virtue of the police power exercised by it over the harbor, it superintended and defined the limits within which the owner should exercise his rights.

In 1683, "the selectmen of Boston staked out a highway for the town's use, on the southerly side of the land belonging to John Gill, deceased, (under whom the plaintiff claims,) being thirty feet in width, from the town corner of said Gill's wharf, next the sea." This is the street since called Summer-street. They laid also another street, "near the shore, on the proprietor's land, fifty feet towards the sea-shore." But they ordered, at the same time, "that the flats and lands between the said highway and the sea be granted to the proprietors of the land, which are abutters on the way, in equal portion to their fronts."

Summer-street, as laid out, ended at high-water mark, and has not yet been extended, nor have the city made any erections on their land between high and low water, previous to 1850; but the public right of navigation over it has been exercised up to

the foot of Summer-street. The drains and sewers from that street, and others connected with it, have hitherto been made to discharge their contents at that point. In course of time, however, as the city increased, this drainage increased also, to such an extent as to become pestilential, and a very great nuisance to the neighborhood. In consequence thereof, the city of Boston has been twice (in 1848 and 1849) indicted for the nuisance, and sentenced to pay a fine. Since that time, the mayor and aldermen, acting as the board of health, have directed the drains or sewers to be continued out, on the land of the city opposite Summer-street, to low-water mark. This is the first attempt by the city to reclaim this land from the sea, and use it for their own benefit, and constitutes the erection which is now the subject of complaint. The sewers are not made to discharge their contents on the plaintiff's land, but into the sea. No property of the plaintiff has been taken for the public use; nor does he in these counts, on which the verdict was obtained, claim any private right of way over the land of defendants, but states his damage to have accrued by a public nuisance, specially injurious to his public right of navigable way over the lands of the defendant.

That the plaintiff had, in common with the rest of the world, a right to navigate over the land belonging to the city, on which the erections complained of were made, is not disputed. Nor is the title of the city to the land so used, unless they have granted it away, or otherwise disposed of it, a subject of dispute in the case. Those under whom the plaintiff claims, as owners of the property adjoining Summer-street, have exercised their right of dominion over the land to low-water mark by covering it with a wharf, many years ago, which is called Bull's wharf. And those who adjoin the street on the other side, have in the same manner exercised their right by erecting a wharf called Price's wharf. The property of the city being but thirty feet wide, and lying between these two wharves, was thus, by the accidents of its form and position, converted into a dock or receptacle for vessels, without any act of the owners of the land. A dock is defined by philologists, according to the American use of the term, to be "the space between wharves." No dock or sli. has been made by the city or people of Boston on their land, either for their own use, or that of any other extraneous or indefinite public. So long as they did not elect to exercise their dominion over this part of the shore, the public right of navigation continued. It was a right defeasible at the will of the owner of the subjacent land. It was a natural right, not derived from any grant, real or presumed, originating with the owner of the soil. But the adjoiners, by the use of this right of navi-

gation in connection with their wharves, claim a right to enjoy the benefit of defendant's property as a dock for their wharves, and thus convert it to their private use, under color of a public right.

In order to effect this, it is contended that the people of Boston, by not exercising their right of reclamation, and by using their property according to their own pleasure, have dedicated it to the public, or world in general, as distinguished from the public, or people of Boston, and have abandoned the full dominion which they once might have exercised over it.

The people of Boston, who owned this land as their common and private property, acted through a corporation, whose corporate grants and licenses are matters of record. Their own use of their own property for their own benefit cannot be called a dedication of it to any other public of wider extent. Whether it was called "town dock" or "public dock," (which were used as synonymous terms,) it would furnish no ground to presume that they had parted with their right to govern and use it in the manner most beneficial to the people or public of the town or city.

The principles of law on which a presumption of the dedication of private property to public use are founded, are correctly stated (3 Stark. Ev. 1203) to be: "That the law will not presume any man's. acts to be illegal, and will therefore attribute to long continued use and enjoyment, by the public, of a right of way or other privilege in or over the lands of another, to a legal rather than an illegal origin; and will ascribe long possession which cannot otherwise be accounted for, to a legal title: upon a reasonable principle and very forcible presumption, that the acquiescence in such enjoyment, for a long period, by those whose interest it was to interrupt it, arose from the knowledge and consciousness on their part that the enjoyment was rightful, and could not be disturbed; and also on consideration of the hardship which would accrue to parties, if after long possession, and when time had robbed them of the means of proof, their titles were to be subjected to a rigorous examination."

It is evident that these principles can have no application to the present case. The exercise of the public right of navigation over the soil of defendant is fully accounted for without any presumption of grant or dedication by the owners. The public enjoyed this highway of nature by a title reaching far before the advent of the Pilgrims, and paramount to any grant to them or by them, but by the law the enjoyment of this public right was made defeasible by the owner of the land. Till he reclaimed his land, the public needed no grant or dedication by him, in order to their enjoyment of the right of navigation over it. The

owner was not bound to exercise his right within a given time, or forfeit it. A man cannot lose the title to his lands by leaving them in their natural state without improvement, or forfeit them by non-user. See Butz v. Ihrie, 1 Rawle, 218.

So long as the city chose to leave their land unreclaimed from the sea, they could not hinder the public navigation over it when covered with water, and could not, therefore, be properly said to acquiesce in that which they could not hinder. Nor could a grant or dedication of a right of way over their land be presumed in favor of the public, who enjoyed it under a different and paramount tenure. The public right has existed and been exercised for thousands of years, but is not hostile to the defendants, though defeasible at their will. It resembles the case of Rex v. Hudson, 2 Strange, 909, where a dedication of land as a public highway was claimed by proof of sixty years' use; but the defendant produced a lease of the way for fifty-six years, and the court decided that no presumption of a dedication could arise during the lease, for the owner could not deny their right to use it, and there could be no presumption from his acquiescence.

It is true that the presumption of a dedication is one of fact, and not an artificial inference of mere law, to be made by the court, yet it is an inference which the court advise the jury to make upon proof of certain facts. It is the duty of the court to state what facts, if proved, will justify such a presumption. To instruct the jury that certain facts are not " sufficient " evidence on which to presume a dedication, without informing them what facts would constitute sufficient evidence for that purpose, is devolving on them the decision of both law and fact, and permitting them to dispose of men's property at their discretion, by presuming grants without a particle of evidence to authorize such presumption.

The counts on which the jury have assessed the damages in this case claim no other right of highway over the lands of the defendant, save the public right of navigation, nor has the evidence shown that he is entitled to any other. The title of the defendants to the land was not disputed. The court ought, therefore, to have instructed the jury that the public right of navigation over the land of defendant was defeasible; that the owners had a right to reclaim their land by wharfing out or making erections thereon beneficial to themselves; that there was no evidence in the case whatever by which the jury could presume that the city or people of Boston had dedicated their land to the use of some other public besides themselves; that it was, consequently, not only the right but the duty of the authorities of the city to extend their sewers to low-water mark, for the

purpose of removing a nuisance injurious to the health of the citizens; and having done so on their own land, the damage to the plaintiff, if any, was *damnum absque injuria*, and he was not entitled to recover. The record shows that these or equivalent instructions were prayed by the counsel of defendant, and refused by the court.

The judgment of the circuit court is therefore reversed, and a *venire de novo* awarded.

Mr. Justice DANIEL dissented.

### Order.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Rhode Island, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court that the judgment of the said circuit court in this cause be and the same is hereby reversed with costs, and that this cause be and the same is hereby remanded to the said circuit court with directions to award a *venire facias de novo*.