EDWARD P. HASKELL *vs.* CITY OF NEW BEDFORD.
SAME *vs.* SAME.

In an action of tort against a city for entering the plaintiff's close and pulling up a post and preventing him from placing a building upon the close, the city answered that the close was a public street and the city rightfully entered upon and used it for the public. Just before the action was brought, the mayor and the city solicitor signed a written statement that the acts complained of were done by the city for the purpose alleged in the answer; and it was proved at the trial that the city marshal did them by the mayor's orders. *Held,* that the statement of the mayor and solicitor did not bind the city, and that the city was not liable, whether the place in question was or was not a public street.

The omission to make due compensation for private property or rights appropriated by authority of the legislature to the public use can be taken advantage of by the owner only, and, if he once assents to the taking, cannot afterwards be availed of by himself or those claiming under him.

A city, authorized by statute to lay out common sewers "through any streets or private lands," may construct them so as to discharge into tide water; but has no right to discharge mud and filth through such a sewer in such quantities as to create a nuisance; and if the city, by such a discharge into a private dock, fills it up and obstructs its use by the owner as he has previously used it for receiving vessels, or makes it offensive to him, the city is liable to an action by him for damages, and may be restrained by injunction at his suit from continuing the nuisance.

A city, authorized by statute to lay out common sewers "through any streets or private lands," has no right to extend such a sewer by a structure upon flats owned by an individual under special grant from the legislature below low water mark.

THE first of these cases was an action of tort, brought May 7, 1870, and tried in the superior court before *Wilkinson,* J.   The

second case was a bill in equity, filed August 2, 1870, and heard upon bill, answer, replication and proofs, before *Ames, J.* Both cases were reported for the determination of the full court, and are stated in the opinion.

*T. M. Stetson,* (*F. B. Greene* with him,) for the plaintiff.

*E. Ames & G. Marston,* for the defendants.

GRAY, J. The plaintiff, being the owner in fee of a parcel of land and wharf in New Bedford, bounded on tide water in the Acushnet River, and of the dock and flats adjoining, under a deed made to him in 1869 by the devisees of John A. Parker, (who died in 1853, and whose title extended, by virtue of the general ordinance of 1647 and of the special act of 1806, *c.* 18,* to the channel of the river,) has brought two suits against the city of New Bedford, the one an action of tort, and the other a bill in equity.

---

* " AN ACT to authorize the owners of lots of land adjoining on Accushnett River, in the town of New Bedford, in the county of Bristol, from Clark's Point, so called, to the head of navigation in said river, to build and extend wharves below low water mark in said river.

" SECTION 1. Be it enacted by the Senate and House of Representatives, in General Court assembled, and by the authority of the same, That the owners and proprietors of lots of land adjoining Accushnett River, in the town of New Bedford, in the county of Bristol, between Clark's Point, so called, and the head of navigation in said river, their heirs and assigns, shall be and hereby are authorized and empowered to erect, continue and maintain wharves parallel with the line of their several lots, as they abut upon said river ; said wharves to extend to the channel of said river, if the owners of said lots think proper ; and each owner of said lot shall have authority to provide docks or erect wharves as aforesaid on the aforesaid extended portion of his said lot, in such way and manner as he may think proper, not exceeding the limits of said channel of said river.

" SECTION 2. And be it further enacted, That if at any time hereafter it shall be made to appear to the satisfaction of the General Court of the Commonwealth of Massachusetts, that the erection, maintaining or continuing said wharves or docks, mentioned in the first section of this act, operates any obstruction to the navigation of said river, or to the right of taking shell or other fish in said river, in that case the said General Court shall have a right, notwithstanding this act, to make such provisions respecting the navigation of said river, and the right of taking said fish, as they may think the public interest requires."

The first cause of action alleged in the suit at law is for enter-ing on the plaintiff's close, and forcibly pulling up a post standing there, and preventing him from placing a building upon the close. The answer of the city denies all the plaintiff's allegations; and alleges that the close in question had long before been legally laid out and accepted as a public street, and that by virtue thereof the city had a right to the use and occupation of the premises for the public, and to prevent any private use and occupation incon-sistent therewith, and did enter and use the premises as by law it had the right to do.

At the trial in the superior court, the plaintiff proved that the city marshal, acting under the order of the mayor of the city, stopped and prevented the plaintiff from moving a building from his adjacent land upon the place in question; and offered in evi-dence a statement in writing, dated two days before the com-mencement of this action, and signed by the mayor and city solicitor, as follows:

" This may certify that the city of New Bedford has this day prevented and excluded Edward P. Haskell from moving his building upon the land and wharf east of Front Street, and con-tained within the recorded locations of Middle Street. The city has also caused to be pulled up and removed a post placed by said Haskell at a spot ten feet east of said Front Street, and two feet north of the dock which lies south of Parker's Wharf, and ex-cludes and will continue to exclude Mr. Haskell from all occupa-tion of said premises. It does this for the purpose of asserting and maintaining that said localities, or some of them, now consti-tute a legally existing city street. May 7, 1870.

" The City of New Bedford,
" By George B. Richmond, Mayor.
" I have advised the mayor to agree to the within.
" E. L. Barney, City Solicitor."

It was admitted that there was no record of any vote of either branch of the city council upon this specific subject. By the city charter, the mayor is made the chief executive officer of the city, and the power of laying out highways is vested in the city council. St. 1847, c. 60, §§ 7, 12. By the ordinances of the

city, the mayor and aldermen are made surveyors of highways, and all persons are prohibited erecting or maintaining any build∗ ing or structure upon any highway without their permission.

No evidence was offered whether the place in question was or was not a public highway. If it was, the building and post were public nuisances, and the plaintiff had no right of action for their exclusion or removal from the street. *Arundel* v. *McCulloch,* 10 Mass. 70. *Gary* v. *Ellis,* 1 Cush. 306. *Commonwealth* v. *Blaisdell,* 107 Mass. 234. If it was not a public highway, the mayor had no authority, either by virtue of his general powers or as a surveyor of highways, to accept or declare it to be such, so as to bind the city. *Anthony* v. *Adams,* 1 Met. 284. *Goff* v. *Rehoboth,* 12 Met. 26. *Reed* v. *Scituate,* 5 Allen, 120. *Palmer* v. *Haverhill,* 98 Mass. 487. Acts done by the mayor and aldermen, or the mayor alone, to keep the streets clear of obstructions, are acts done by them as public officers, and not as agents of the city, and for such acts the city was not liable to be sued. *Walcott* v. *Swampscott,* 1 Allen, 101. *Griggs* v. *Foote,* 4 Allen, 195. *Barney* v. *Lowell,* 98 Mass. 570. *Fisher* v. *Boston,* 104 Mass. 87.

Such acts do not stand upon the same ground as acts done by municipal officers in maintaining or repairing a building owned by the city, and for which it receives rent like any other owner; *Thayer* v. *Boston,* 19 Pick. 511; *Oliver* v. *Worcester,* 102 Mass. 489; or in constructing or repairing, within the authority conferred by a statute accepted by the city, a common sewer, declared by law to be the property of the city, and the expenses of which it is authorized to assess upon the abutters; Gen. Sts. *c.* 48, § 3; *Child* v. *Boston,* 4 Allen, 41; *Emery* v. *Lowell,* 104 Mass. 13; or under votes of a town, in repairing a bridge or highway which the town is obliged to keep in repair, and causing damage to property outside the limits of the way, as in *Hawks* v. *Charlemont,* 107 Mass. 414.

The ordinances of New Bedford confer on the city solicitor authority to represent the city in suits and prosecutions only; and an admission made by him before suit brought does not bind the city, without further proof of authority to make it. *Wagstaff* v.

*Wilson.* 4 B. & Ad. 339 ; *S. C.* 1 Nev. & Man. 4. Neither the city solicitor's approval of the certificate of the mayor, nor the acts of the city marshal under the mayor's orders, could have any greater effect to make the city liable, than the acts of the mayor himself.

The allegations in the answer might indeed be evidence against the city, in another suit, of the right or title thereby asserted. *Central Bridge* v. *Lowell,* 15 Gray, 106, 122. *Boston* v. *Richardson,* 13 Allen, 146, 162, and 105 Mass. 351, 374. But they did not include any statement that the acts of the mayor, the city solicitor, or the city marshal, were done by either of those officers as an agent of the city. And in the present action, they must be treated as mere allegations of the grounds of defence, and not competent evidence against the city for any purpose. Gen. Sts. c. 129, § 72. *Walcott* v. *Kimball,* 13 Allen, 460.

It was therefore rightly ruled that the mayor and city solicitor had no authority to bind the city by their agreement ; and that the facts proved as to the removal of the post and the exclusion of the building from Middle Street would not support the action.

The other cause of action alleged in the suit at law is, that the city, by means of a large drain or sewer, turned and directed and placed upon the plaintiff's premises large quantities of foul and disgusting substances, and has continued and still continues so to do ; to the great injury of the plaintiff, and of his privilege and right to erect and maintain wharves, provide docks, and use and enjoy the same.

The bill in equity alleges that the city has already constructed a common sewer, outside of the dock, but opening upon and into the same, into which sewer many tenements and houses have entered their drains, that the number of the same has largely increased, and that now very large quantities of foul and disgusting substances are continually brought down and conducted by the city, by means of the sewer, into the dock, and have already greatly and illegally obstructed the same, and now cause a great and pestilential stench at the dock, and disturb and destroy the plaintiff's privilege of maintaining the dock and wharf ; and that

the city has done and is continuing to do this without any color
or process of law, and to the great injury and common nuisance
of all citizens, as well as to the private injury and nuisance of the
plaintiff.

By the city charter, the city council was authorized " to cause
drains and common sewers to be laid down through any streets or
private lands, paying the owners such damage as they may sus-
tain thereby."   St. 1847, *c.* 60, § 14.

It was proved in each case that the whole dock was below low
water mark; that the wharf and dock were established forty
years ago, and were used by whale ships, freighting vessels, and
vessels laid up and being repaired; and that in 1851, while Par-
ker, from whom the plaintiff derived his title, owned the wharf
and dock, and also the land between the head thereof and the
end of Middle Street as it then existed, the city council passed a
vote authorizing the mayor and aldermen " to cause a common
sewer to be constructed and laid through Middle Street from
County Street to the River;" that in 1852, pursuant to that
vote, a sewer was built along the centre of Middle Street, and
thence through Parker's land to the wall at the head of the
dock, opening through it into the dock; that in July 1852, after
the completion of this sewer, the city council passed a vote requir-
ing the owners of lands adjoining the portion of Middle Street,
through which the sewer had been laid, to construct private drains
from their respective houses or lots into it; and that such drains,
including those from sinks and privies, were accordingly opened
into the sewer from a hotel, a soap factory, several apothecary's
shops, and a great number of dwelling-houses.

In the action at law, it was not disputed that the original lay-
ing out and making of the sewer was legal.   In the suit in equity,
the plaintiff objected to its legality, because it did not appear that
any compensation had ever been made for the private property
taken therefor, as required by the tenth article of the Declaration
of Rights; but it did appear at the hearing that the sewer was
originally laid out with Parker's assent, and that he immediately
afterwards opened private drains into it from other lots of his
abutting on Middle Street.   Upon this state of facts, neither

Parker nor the plaintiff could afterwards object to the validity of the original laying out and construction of the sewer, for want of the compensation required to be made by the Constitution. The omission to make due compensation for private property or rights appropriated by authority of the legislature to the public use can be taken advantage of by the owner only, and, if he once assents to the taking, cannot afterwards be availed of by himself or those claiming under him. *Hildreth* v. *Lowell*, 11 Gray, 345, 352. *Brown* v. *Worcester*, 13 Gray, 31. *Embury* v. *Conner*, 3 Comst. 511. The plaintiff is not therefore entitled to damages or relief, either at law or in equity, for the laying out and construction of the sewer in Middle Street and through Parker's land to the dock.

The plaintiff however contends, that, if he cannot be permitted to dispute the legality of the original construction of the sewer, the discharge of filth into the dock was never legal.

In the action at law, as the report states, there was evidence tending to show that, from the time the plaintiff acquired his title in 1869 to the date of the writ, the sewer carried mud and filth into the dock, and obstructed and partially filled it, to the prejudice of navigation, and caused offensive and pestilential odors and gases from the mouth of the sewer and from the deposits in the dock, so as to be a public nuisance, and also a private nuisance to the plaintiff's wharf and dock and his use thereof. The learned judge who presided at the trial in the superior court ruled that neither the stench caused by the sewer and the deposits in the dock, nor the filling up of the dock by the deposits from the sewer, was a subject for which the plaintiff could recover damages in this form of action; and the question of the correctness of this ruling is reserved for our determination.

One great natural office of the sea and of all running waters is to carry off and dissipate, by their perpetual motion and currents the impurities and offscourings of the land. The owner of any lands bordering upon the sea may lawfully throw refuse matter into it, provided he does not create a nuisance to others. And there can be no doubt that public bodies and officers, charged by law with the power and duty of constructing and maintaining

sewers and drains for the benefit of the public health, have an equal right. *Boston* v. *Lecraw*, 17 How. 426, 436. *Attorney General* v. *Kingston*, 13 Weekly Rep. 888 ; *S. C.* 34 L. J. N. S. (Ch.) 481. But it by no means follows that either the city or any private person has the right to deposit filth upon the sea shore in such quantities as to create a nuisance to health or navigation.

If the owner of this dock had himself suffered filth to accumulate therein to such an amount as to create a nuisance preju dicial to the public health, the municipal authorities might perhaps have been authorized to remove such nuisance by filling up the dock, or by proper proceedings as a board of health have compelled the owner to remove it. *Baker* v. *Boston*, 12 Pick. 184. *Salem* v. *Eastern Railroad Co.* 98 Mass. 431. And the legislature might doubtless by express words or necessary implication, and making due compensation, have authorized any private rights in the dock to be taken for the purpose of suppressing a nuisance. *Dingley* v. *Boston*, 100 Mass. 544.

But the right conferred upon the city of New Bedford to lay out common sewers " through any streets or private lands " does not include the right to create a nuisance, public or private, upon the property of the Commonwealth, or of an individual, within tide water. Hale de Portibus Maris, *c.* 7, in Hargr. Law Tracts, 85. *Boston* v. *Richardson*, 19 How. 263, 270, and 24 How. 188, 193. *Proprietors of Locks & Canals* v. *Lowell*, 7 Gray, 223. *Sherman* v. *Tobey*, 3 Allen, 7. *Attorney General* v. *Birmingham*, 4 Kay & Johns. 528. *Attorney General* v. *Leeds*, Law Rep. 5 Ch. 583.

The injury to the public from such a nuisance may be redressed by indictment at law or information in equity. But the question whether either or both of these parties are liable to prosecution in behalf of the public is not raised and cannot be decided in these cases.

If, as the declaration in the plaintiff's action at law alleges, and the evidence introduced at the trial tended to show, the discharge of filth through the sewer into the plaintiff's dock obstructed his use of the dock, and made it offensive, and thus created a private nuisance to the plaintiff upon his own land, he may

maintain an action for the special damages thereby occasioned to him, without regard to the question whether it is also a nuisance to the public. The plaintiff's title extended, by virtue of the St. of 1806, *c.* 18, to the channel of the river ; the filling up of the dock impaired his use and enjoyment of it for the purpose for which it had been constructed and actually used ; and the injury thus done to him differed not only in degree, but in kind, from the injury to the public by interference with navigation. Neither this special injury to him, nor that occasioned to his premises by making them offensive and unhealthy, was merged in the common nuisance. *Boston* v. *Richardson*, and *Proprietors of Locks & Canals* v. *Lowell*, *ubi supra.* *Nichols* v. *Boston*, 98 Mass. 39. *Harvard College* v. *Stearns*, 15 Gray, 1, 9. *Morton* v. *Moore*, Ib. 573. *Eames* v. *New England Worsted Co.* 11 Met. 570. *Wesson* v. *Washburn Iron Co.* 13 Allen, 95. *Frink* v. *Lawrence*, 20 Conn. 117. *Clark* v. *Peckham*, 9 R. I. 455. *Rose* v. *Groves*, 5 Man. & Gr. 613 ; *S. C.* 6 Scott N. R. 645. It follows that the ruling, that the action could not be maintained for these causes, was erroneous ; and the case must stand for trial.

Against the continuance of such a nuisance, if clearly proved, equity will also grant relief by injunction. *Rowe* v. *Granite Bridge*, 21 Pick. 344, 347. *District Attorney* v. *Lynn & Boston Railroad Co.* 16 Gray, 242, 245. *Pennsylvania* v. *Wheeling & Belmont Bridge Co.* 13 How. 518. *Spokes* v. *Banbury Board of Health*, Law Rep. 1 Eq. 42. *Goldsmid* v. *Tunbridge Wells Improvement Commissioners*, Law Rep. 1 Eq. 161, and 1 Ch. 349. *Attorney General* v. *Colney Hatch Lunatic Asylum*, Law Rep. 4 Ch. 146. *Attorney General* v. *Leeds*, Law Rep. 5 Ch. 583.

The justice of this court, before whom the plaintiff's suit in equity was heard, has found, as matter of fact, that the sewer ever since it was built carried filth, solid and fluid, into the dock, which at first fell into a depth of water, and from which no nuisance resulted until three or four years ago ; that in course of time the accumulation approached the surface and was longer exposed at each ebb of the tide ; that, either wholly or substantially or largely in consequence of the discharge of mud and filth through the sewer, the dock, which had previously received vessels draw

ing several feet of water, has gradually shoaled, so that now the upper end is uncovered at low tide, and the dock in its whole width and for a great part of its length is useless for navigation ; that the discharge from the sewer still continues, the fill is greater as the tide has less control, and during the last year the line of low water has advanced eighteen feet ; that the dock has now become offensive and intolerable, discharges large quantities of offensive and noxious gases, and is a public nuisance ; that in summer there is very little time when the plaintiff's counting-room can be occupied without discomfort from the sewer, its door-knobs and varnish have been blackened by the gases, and the plaintiff has been repeatedly driven from it by the stench ; and that the sewer is a private nuisance to the plaintiff.

The defendants have shown no good reason why the plaintiff should not have an injunction against the continuance of the nuisance in his dock. They have not maintained it for twenty years, and have therefore acquired no right by adverse use. *Cotton* v. *Pocasset Manufacturing Co.* 13 Met. 429. To the defendants may be well applied the words of Lord Chancellor Hatherley in the case of the city of Leeds : " The only point that really seemed to me to create any question in the cause was this ; that all was done sixteen years ago ; that a great deal of money was laid out in the construction of these works ; and that the land-owners and other persons injured might be affected by standing by and seeing an expenditure of money which they might know could only tend to one result, and was only intended for one purpose, which purpose must necessarily produce the result in question, and yet making no complaint. I think the true answer is, that, when any person finds that the legislature has authorized a work to be done, (and, of course, the force of this is increased by the view we have taken, that the true construction of the act is, that it is to be done without creating a nuisance,) he is not to assume it will create a nuisance. On the contrary, the presumption would be, that the board would not do anything unlawful. It is lawful for them to make the sewers, it is lawful for them to conduct the sewage into the river, but they are to do it in such a way as not to create a nuisance ; and until it is ascertained that

the construction of the work will result in a nuisance, I do not see how any person could have sued." "I do not think the mere fact of a plaintiff bearing for a certain time an evil would alone prevent the court from saying that the evil may not be arrested, and in this case there is certainly this fact, that the evil is a continually increasing evil ; and that being so, it seems to me high time that the parties who do mean to assert their rights should do so." Law Rep. 5 Ch. 594, 595.

In the suit in equity, it also appears that the city council on June 8, 1870, directed the mayor and aldermen " to extend Middle Street sewer from its present terminus eighty feet, more or less, to the eastward ; " and that, when the bill was filed, the city authorities were about erecting a double row of piles in the dock upon which it was intended to continue the sewer eighty feet by laying a brick culvert of about two feet and a half in diameter, which would be some hindrance to the use of the dock for navigation in its present condition, and a still greater obstruction if the dock were cleared of the filth already deposited there by the sewer. The bill prays for an injunction against such extension of the sewer. If the city owned the fee in the soil of the dock, it might be authorized to erect such a structure. *Boston* v. *Lecraw,* 17 How. 426. *Boston* v. *Richardson,* 105 Mass. 351, 374. But as it does not, it had no such authority, and the plaintiff, for the reasons already stated, is entitled to an injunction against the extension of the sewer into the dock by means of the structure proposed, as well as against the continuance of the nuisance by the deposit of filth in the dock through the sewer as previously constructed.

The result is, that, upon the claim for damages for the private nuisance created by the deposit of mud and filth through the sewer in the plaintiff's dock, the

*Action at law is to stand for trial ;*

and in the suit in equity, there must be a

*Decree for the plaintiff.*