CONSTITUTION WHARF COMPANY *vs.* CITY OF BOSTON.

Suffolk.   March 16, 1892. — May 10, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, LATHROP, & BARKER, JJ.

*Statute — Evidence — Negligence in Management of Sewers.*

In an action for damages occasioned by the filling up of the plaintiff's docks by sewage discharged from the defendant's sewers, it was *held* competent for the plaintiff to introduce in evidence a statute requiring the substitution of water-closets for privies in buildings situated on a street in which there is a sewer, and to show that the flow was largely increased after the substitution was made in a great number of houses along the line of the sewers which emptied their contents near the plaintiff's wharf.

Where, in an action for damages occasioned by the filling up of the plaintiff's docks by sewage discharged from the defendant's sewers, the report stated that the case was submitted to the jury under instructions not excepted to, it was *held* that it must be assumed that the plaintiff corporation was permitted to recover only on a finding by the jury that it was injured by the negligence of the defendant in the management of its sewers and the discharge of its sewage, and that the plaintiff had a right to erect wharves and artificially deepen its docks to make its property available for use, and its doing so did not relieve the defendant from liability for the consequences of the defendant's negligence.

TORT to recover damages alleged to have been caused by the filling up of the plaintiff's docks by sewage and other matter discharged from the defendant's sewers.

At the trial in the Superior Court, before *Mason,* C. J., it appeared in evidence that the plaintiff had been long seised in fee of the land, wharves, flats, buildings, and docks in Boston known as Constitution Wharf, and shown, with the sewers hereinafter mentioned, on the following plan.

It appeared in evidence that the defendant duly constructed, under the statutes of the Commonwealth, and maintained for many years before the bringing of the action, the sewers shown on the plan, — the sewer entering Chelsea Ferry since 1833, the one in Battery Wharf since 1858. None of the defendant's sewers discharged directly into the plaintiff's docks. There was evidence that there were some piles between the mouth of the Hanover Street sewer and the plaintiff's north dock, and some of the piles on which Battery Wharf is built were between the sewer under that wharf and the plaintiff's south dock.

The plaintiff introduced evidence tending to show that the matter discharged from these sewers was carried by the motion of the water directly into its docks and was there deposited, and that when the docks were dredged, in the autumn of the year 1889, large quantities of matter — all sewage and dirt from sewers — were removed, at great expense to the plaintiff.

The plaintiff also introduced evidence that the sewer under Battery Wharf had been for many years out of repair; that there were large holes in it, and that the matter from it was all discharged from these holes, none of it reaching its mouth; that the discharge was under Battery Wharf, and that the discharged matter found its way immediately into the plaintiff's south dock; that at high tide it was washed in by the water, and at low tide ran in over the surface of the flats under the wharf.   The plaintiff also introduced evidence, which was not contradicted, that, instead of being allowed to discharge into the ferry slip, the Hanover Street sewer could have been carried out so that the discharge would be on a line with the ends of the piers; that there would have been no difficulty in so carrying it out, and the cost would be slight, and the matter discharged from it, when so carried out, would be swept away by the current down the harbor, and would not be carried into the plaintiff's docks.   The plaintiff also introduced evidence that this sewer had no tide-gates, and that proper tide-gates would have tended to diminish the flow of matter discharged from the sewer into the plaintiff's docks.

The plaintiff called a witness of large experience in the construction, repair, and inspection of sewers, who testified to making examinations of the sewers on March 17th and April 4th, 1891, and described, among other things, a very large hole in the sewer under Battery Wharf at a point located by the witness, caused by the bottom of the sewer being wholly gone for a distance of eight feet or more, from which witness saw matter discharging; and the witness further testified that the appearance and condition of the hole showed that the same had existed a number of years in substantially the same condition.   A number of witnesses called for the plaintiff had previously testified to having seen, at various times during six years next before the date of the writ, sewage floating in the plaintiff's south dock

at about the place opposite the point indicated by the witness as the place where he found the hole, and there was evidence that there had been no change in material conditions up to the date of the examinations made by said witness.

The plaintiff offered in evidence the St. of 1885, c. 382, of which the first two sections are as follows:

"Section 1. Every building in the city of Boston used as a dwelling, tenement, or lodging-house, or where persons are employed, shall have at all times such number of good and sufficient water-closets, earth-closets, or privies, as the board of health of said city may determine; but the occupants of any two or more of any such buildings may use such closets or privies in common, provided the access is easy and direct; and said board shall not require more than one such closet or privy for every twenty persons.

"Section 2. Every such building situated on a street in which there is a sewer shall have water-closets, and shall not have a cesspool or privy connected with it, except where, in the opinion of the board of health, it can be allowed to remain for a longer time, and then only as said board shall approve."

The plaintiff then introduced evidence that in the territory drained by the sewers were many dwelling, tenement, and lodging houses; that before the enactment of the statute the buildings had been largely without water-closets, but were provided with vaults and privies; and that after the enactment of the statute, the substitution thereby required in the building of water-closets for such vaults and privies had been carried on to a considerable extent, and that the water-closets were discharged into the sewers, and the quantity of matter discharged from the sewers had been thereby materially increased.

The defendant introduced evidence tending to show that prior to 1837 the bottom of the plaintiff's docks sloped towards the channel of the harbor; that between 1837 and 1884 the docks had been deepened, and the bottom made more level; that the change increased the tendency of filth or silt floating in the harbor to gather there; that the natural scour of the docks by the tides had thereby been impaired, and their tendency to fill up increased; that the coming together of the currents of the Charles and the Mystic Rivers at a point opposite

the docks made there slack water and eddies, which carried into the docks silt, filth, and sewage brought down by the rivers; and that prior to September, 1889, the docks had not been dredged out since 1879 or 1880.

The defendant asked the court to instruct the jury, "that, if the jury were of the opinion that if it had not been for the wharves and the artificial deepening of the plaintiff's docks the natural scour of the tide would have carried the whole or most of the matter out to sea, then the plaintiff cannot recover, if its damage was caused by its own interference with the harbor and the waters of it at that point."

The judge declined to give this instruction; and the defendant alleged exceptions.

*T. M. Babson & R. W. Nason*, for the defendant.

*L. S. Dabney*, (*C. H. Tyler* with him,) for the plaintiff.

KNOWLTON, J. We see no error in the admission of the St. of 1885, c. 382, in evidence. It was a law of the Commonwealth, which everybody was presumed to know, and which gave color to acts of the defendant relied on by the plaintiff. As bearing on the question whether the plaintiff's dock was filled up and injured by sewage brought down and negligently discharged near the dock by the defendant, the quantity of sewage that came through the sewers was a material fact to be considered. It was therefore competent for the plaintiff to show that the flow through the sewers was largely increased in 1885 and 1886 by substituting water-closets for vaults and privies in a great number of houses along the line of the sewers which emptied their contents near the plaintiff's wharf. Evidence of this fact was introduced without objection, and, as characterizing the general substitution, and the act of substitution in each house, it was competent to consider the statute which required it to be made. It was a substitution required by law, as distinguished from an unlawful substitution, or a substitution originally planned by the particular property owners who made it. Like a declaration accompanying and characterizing an act, which is competent as a part of the *res gestœ* wherever the act itself is competent, the statute in this case, which required each of these acts, is so connected with the act that the act and the nature of it cannot be fully understood

without knowledge of the statute. So far as it relates to the question at issue, perhaps the act of putting a water-closet in a house in the place of a vault or privy is no different, if done under the statute, from what it would be if there were no law on the subject; but if that be so, the plaintiff still had a right to prove the act as it was, with all the circumstances which showed its true quality. There is nothing to show that the defendant was in any way injured by the introduction in evidence of the statute. It does not appear whether there was any dispute as to the fact testified to, about the substitution of water-closets for vaults and privies. If not, then the existence of the statute was simply a competent fact, which turned out to be unimportant to either party. But if the fact or the extent of this substitution was in controversy, we think the jury might well consider the nature and quality of each act testified to, as shown by the statute, in determining whether the testimony of the witnesses was probably true. It is far more probable that a great number of changes required by law would be made in a short time than that such number of similar changes would result merely from the voluntary action of property owners. *Pringle* v. *Woolworth*, 90 N. Y. 502.

The only other exception argued was to the refusal to give an instruction, " that, if the jury were of the opinion that if it had not been for the wharves and the artificial deepening of the plaintiff's docks the natural scour of the tide would have carried the whole or most of the matter out to sea, then the plaintiff cannot recover, if its damage was caused by its own interference with the harbor and the waters of it at that point." The report states that the case was submitted to the jury under instructions which were not excepted to. It must be assumed that the plaintiff corporation was permitted to recover only on a finding by the jury that it was injured by the negligence of the defendant in the management of its sewers and the discharge of its sewage. *Haskell* v. *New Bedford*, 108 Mass. 208. *Brayton* v. *Fall River*, 113 Mass. 218. *Boston Rolling Mills* v. *Cambridge*, 117 Mass. 396. *Morse* v. *Worcester*, 139 Mass. 389.

The plaintiff had a right to erect wharves and artificially deepen its docks to make its property available for use, and its doing so did not relieve the defendant from liability for the consequences of the defendant's negligence. *Davidson* v. *Boston*

*& Maine Railroad,* 3 Cush. 91, 106.   *Commonwealth* v. *Alger,*
7 Cush. 53, 75, 79, 81.   In determining whether the injury
resulted from the defendant's negligence, the jury must be pre-
sumed to have considered, under the instructions of the court,
the condition of the plaintiff's property, and the use which was
made of it, and they could not properly have been permitted
to deprive the plaintiff of its remedy because a use was made
of its property which changed somewhat the currents of the tide
at that place, and made the matter negligently discharged by
the defendant accumulate in larger quantities than it otherwise
would have done.                    *Judgment on the verdict.*