PD-0031-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/5/2015 2:29:29 PM
Accepted 2/6/2015 2:59:10 PM
ABEL ACOSTA
CLERK

NO. PD-0031-15

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

---

**Ex parte DAVID LEE VICTORICK,**
**Petitioner**

---

# PETITION FOR DISCRETIONARY REVIEW
(Oral Argument Not Requested)

---

**On Discretionary Review from Docket Number 9-14-00112-CR**
**Ninth Court of Appeals, Beaumont**

---

Trial Court Cause Number 13-11-12323-CR
435TH Judicial District
Montgomery County, Texas

---

Submitted by:

L.T. "Butch" Bradt #02841600
14015 Southwest Freeway, Suite 4
Sugar Land, Texas 77478-3500
(281) 201-0700
Fax: (281) 201-1202
ltbradt@flash.net

Attorney for David Lee Victorick

FILED IN
COURT OF CRIMINAL APPEALS

February 6, 2015

ABEL ACOSTA, CLERK

# IDENTITY OF PARTIES

**Petitioner:**  David Lee Victorick

Counsel for Petitioner at Trial Court and on Appeal:
L.T. "Butch" Bradt #02841600
14015 Southwest Freeway, Suite 4
Sugar Land, Texas 77478-3500
(281) 201-0700
Fax: (281) 201-1202
ltbradt@flash.net

**Respondent:**  The State of Texas

Counsel for the State of Texas:
Honorable Brett Ligon, District Attorney
William Delmore, Ass't District Attorney
207 W. Phillips, 2nd Floor
Conroe, Texas  77301
(936) 539-7800
Fax: (936) 760-6940
bill.delmore@mctx.org

Postconviction Litigation Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1400
const_claims@texasattorneygeneral.gov

State Prosecuting Attorney
P.O. Box 13046
Austin, Texas 78711-3046
information@spa.texas.gov


**Trial Court Judge:**
Honorable Michael T. Seiler

# TABLE OF CONTENTS

**Page**

IDENTITY OF PARTIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii
    NOMENCLATURE USED IN BRIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**PROCEDURAL HISTORY**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

QUESTIONS OR GROUNDS FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . 2
    QUESTION NO. ONE: Is the evidence legally sufficient to support the Petitioner's conviction? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    QUESTION NO. TWO: When a judge pre-judges a defendant's guilt, is the defendant thereby denied the fair, neutral and impartial magistrate that he is guaranteed under Amend. I, V and XIV, U.S. Constitution?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    QUESTION NO. THREE: Are Rule 18a(a)(3) and 18a(j)(1)(A), Texas Rules of Civil Procedure unconstitutional as depriving a criminal defendant of Due Process when the evidence of the judge's prejudgment of guilt is placed in orders in the case and the defendant is denied immediate appellate review of the denial of his motion to recuse?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    Legal Sufficiency Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT AND AUTHORITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    ISSUE NO. ONE RESTATED: The evidence is legally insufficient to support Petitioner's conviction.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    Statutory Construction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    The Evidence Does Not Support A Conviction. . . . . . . . . . . . . . . . . 10

ISSUE NO. TWO RESTATED: When a judge pre-judges a defendant's guilt, the defendant is thereby denied the fair, neutral and impartial magistrate that he is guaranteed under Amend. I, V and XIV, U.S. Constitution.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    Construction of Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    Prejudgment Of Guilt. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    Due Process Concerns. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    Rule 18b Required Recusal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

ISSUE NO. THREE: Rules 18a(a)(3) and 18a(j)(1)(A), T.R.C.P. are unconstitutional as depriving a criminal defendant of Due Process when the evidence of the judge's prejudgment of guilt is placed in orders in the case and the defendant is denied immediate appellate review of the denial of his motion to recuse.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION AND PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATION OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

APPENDIX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**NOMENCLATURE USED IN BRIEF**

**CR - 1ST Appeal** – Clerk's Record filed in Docket No. 09-13-00551-CR

**CR - 2ND Appeal** – Clerk's Record filed in Docket No. 09-14-00112-CR

**CR - 3RD Appeal** – Clerk's Record filed in Docket No. 09-14-00190-CR

**TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES**

*Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986). . . . . . . . . . . . . . . . . . . . . . 16

*Arizona v. Fulminante*, 499 U.S. 279 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Armstrong v. Manzo*, 380 U.S. 545 (1965). . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Boston v. Lecraw*, 58 U.S. 426 (1856). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bracy v. Gramley*, 520 U.S. 899 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Estelle v. Williams*, 425 U.S. 501 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Gagnon v. Scarpelli*, 411 U.S. 778 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Gonzales v. Johnson*, 994 F.Supp. 759 (N.D.Tex. 1997). . . . . . . . . . . . . . . 17

*Hudson v. United States*, 522 U.S. 93 (1997). . . . . . . . . . . . . . . . . . . . . . . 5

*In re Murchison*, 349 U.S. 133 (1955). . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Jackson v. Virginia*, 443 U.S. 307 (1979). . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980). . . . . . . . . . . . . . . . . . . . . . 18

*Mathews v. Eldridge*, 424 U.S. 319 (1976). . . . . . . . . . . . . . . . . . . . . . . . 20

*Morrissey v. Brewer*, 408 U.S. 471 (1972). . . . . . . . . . . . . . . . . . . . . . . . . 16

*Patterson v. Coughlin*, 905 F.2d 564 (2d Cir.1990). . . . . . . . . . . . . . . . 16, 17

iv

*Ryland v. Shapiro*, 708 F.2d 967 (5th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . 16

*Tumey v. Ohio*, 273 U.S. 510 (1927).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Ward v. Village of Monroeville*, 409 U.S. 57 (1972). . . . . . . . . . . . . . . . . . . 16

**STATE CASES**

*Adames v. State*, 353 S.W.3d 854 (Tex. Crim. App. 2011). . . . . . . . . . . . . . 5

*Adelman v. State*, 828 S.W.2d 418 (Tex. Crim. App. 1992). . . . . . . . . . . . . 4

*Allen v. State*, 651 S.W.2d 267 (Tex. Crim. App. 1983). . . . . . . . . . . . . . . . 5

*Barnard v. Barnard*, 863 S.W.2d 770 (Tex. App.—Fort Worth 1993, no writ)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Blue v. State*, 41  S.W.3d 129 (Tex. Crim. App. 2000). . . . . . . . . . . . . . . . . 18

*Brooks v. State*, 323 S.W.3d 893 (Tex.  Crim.  App.  2010). . . . . . . . . . . . 4-8

*Carlsen v. State*, 654 S.W.2d 444 (Tex. Crim. App. 1983). . . . . . . . . . . . . 4

*City of Hurst v. City of Colleyville*, 501 S.W.2d 140 (Tex. Civ. App.—Fort
Worth 1973, writ ref'd n.r.e.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Clayton v. State*, 235 S.W.3d 772 (Tex.  Crim.  App. 2007). . . . . . . . . . . . 4

*Delay v. State*, 443 S.W.3d 909 (Tex. Crim. App. 2014). . . . . . . . . . . . . . . 13

*Ex parte Briseño*, 135 S.W.3d 1 (Tex. Crim. App. 2004). . . . . . . . . . . . . . . 21

*Ex parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013). . . . . . . . . . . . . . . . . . 11

*Ex parte Victorick*, Docket No. 09-14-00112-CR, ____ S.W.3d _____, 2014 WL
6984140 (Tex.  App. —Beaumont December 10, 2014). . . . . . . . . . . . . . . 1, 14

*Foster v. State*, 635 S.W.2d 710 (Tex. Crim. App. 1982). . . . . . . . . . . . . . . . 5

*Garza v. State*, 715 S.W.2d 642 (Tex. Crim. App. 1986). . . . . . . . . . . . . . . . 5

*Gollihar v. State*, 46 S.W.3d 243 (Tex. Crim. App. 2001). . . . . . . . . . . . . . 6

*Halbert v. Alford*, 16 S.W. 814 (Tex. 1891). . . . . . . . . . . . . . . . . . . . . . . . . 14

*Isassi v. State*, 330 S.W.3d 633 (Tex. Crim. App. 2010). . . . . . . . . . . . . . . . 5

*Johnson v. State*, 364 S.W.3d 292 (Tex. Crim. App. 2012). . . . . . . . . . . . . . 6

*Lancon v. State*, 253 S.W.3d 699 (Tex. Crim. App. 2008). . . . . . . . . . . . . . . 7

*Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009).. . . . . . . . . . . . . . 4-6

*McFarland v. State*, 930 S.W.2d 99 (Tex. Crim. App. 1996). . . . . . . . . . . . 5

*Narvaiz v. State*, 840 S.W.2d 415 (Tex. Crim. App. 1992). . . . . . . . . . . . . . 5

*Ortiz v. State*, 577 S.W.2d 246 (Tex. Crim. App. 1979). . . . . . . . . . . . . . . . 5

*Prible v. State*, 175 S.W.3d 724 (Tex. Crim. App. 2005). . . . . . . . . . . . . . . 4

*Richardson v. State*, 973 S.W.2d 384 (Tex. App. – Dallas 1998, no pet.)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Schexnider v. State*, 943 S.W.2d 194 (Tex. App. – Beaumont 1997, no pet.)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Smith v. State*, 961 S.W.2d 501 (Tex. App. – San Antonio 1997). . . . . . . . . 9

*Surgitek, Bristol–Myers Corp. v. Abel*, 997 S.W.2d 598 (Tex. 1999)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Thompson v. State*, 697 S.W.2d 413 (Tex. Crim. App.1985). . . . . . . . . . . . . 13

*Wallace v. State*, 955 S.W.2d 148 (Tex. App. – Beaumont 1997, no pet.)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**STATE STATUTES**

Tex. Code Crim. Proc. Art. 3.01 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Tex. Code Crim. Proc. Art. 44.25 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Tex. Code Crim. Pro. Art. 56.01(3) (2006). . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tex. Code Crim. Pro. Art. 56.32(a)(11)(A)(I) (2006). . . . . . . . . . . . . . . . . . 15

Section 311.016(3), Texas Gov't Code (2013). . . . . . . . . . . . . . . . . . . . . . . 20

Section 33.021(b), Texas Penal Code (2011). . . . . . . . . . . . . . . . . . . . . . . . . 11

Section 33.021(c), Texas Penal Code (2011). . . . . . . . . . . . . . . . . . . . . . . 1, 9, 11

Tex. Code Crim. Proc. Art. 3.01 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**STATE RULES**

Rule 18a(a)(3), Tex. R. Civ. P. (2011). . . . . . . . . . . . . . . . . . . . . . . . . 3, 19-21

Rule 18a(j)(1)(A), Tex. R. Civ. P. (2011). . . . . . . . . . . . . . . . . . . . . 3, 19, 21

Rule 18b(b), Tex. R. Civ. P. (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Rule 18b(b)(1), Tex. R. Civ. P. (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Rule 18b(b)(2), Tex. R. Civ. P. (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Tex. Rule App. Proc. 43.2(c) (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

# U.S. CONSTITUTION

Amend. I, U.S. Constitution. . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13, 16, 17, 19

Amend. V, U.S. Constitution.. . . . . . . . . . . . . . . . . . . . . . . . . . . 3-5, 13, 17, 19

Amend. XIV, U.S. Constitution.. . . . . . . . . . . . . . . . . . . . . 3-5, 13, 16, 17, 19, 21

# OTHER AUTHORITIES

Black's Law Dictionary (9th ed. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Concise Oxford American Thesaurus*, 674 (2006). . . . . . . . . . . . . . . . . . . 8

Random House Dictionary, © Random House, Inc. 2014. . . . . . . . . . . . . 10

## Statement Regarding Oral Argument

Under Texas Rules of Appellate Procedure 68.4(c), Petitioner does not request oral argument before this Court. *See* Tex. Rule App. Proc. 68.4(c). Although this is a meritorious appeal of a criminal case, Petitioner believes that the facts and legal arguments are adequately presented in this Petition and in the record on appeal. Petitioner also believes that the decisional process of the Court will not be significantly aided by oral argument. As a result, Petitioner does not request oral argument and asks that the Questions presented in this Petition be considered by submission only. Should the Court desire oral argument, Petitioner will be happy to comply.

**TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:**

Petitioner, David Lee Victorick, respectfully shows:

## STATEMENT OF THE CASE

This petition requests this Court to review the judgment and opinion of the Ninth Court of Appeals in *Ex parte Victorick*, Docket No. 09-14-00112-CR, ____ S.W.3d _____, 2014 WL 6984140 (Tex. App. —Beaumont December 10, 2014) (Designated for publication) (*See* Appendix 1).

On November 14, 2013, the State charged Petitioner by indictment with a second-degree felony under Section 33.021(c), Texas Penal Code.

Trial was to a jury that convicted. The Ninth Court of Appeals affirmed.

## PROCEDURAL HISTORY

On August 30, 2013, Ancillary Conditions of Bond were imposed on Petitioner. (CR – 1ST Appeal, p. 13, Appendix 2). On December 6, 2013, the trial court ordered the District Clerk to place certified copies of all documents from Cause No. 13-08-09228-CR into Cause No. 13-11-12323-CR. (CR – 1ST Appeal, p. 86).

Petitioner was indicted on November 14, 2013 for violating § 33.021(c), Texas Penal Code. (CR – 3RD Appeal, p. 6)

On November 19, 2013, the Ancillary Conditions of Bond were again

1

imposed on Petitioner.  (CR - 1ST Appeal, p. 48; Appendix 3).

Petitioner plead not guilty. Between March 31 and April 3, 2014, a trial was had before a jury. (RR Vol. 2 – 7).

The jury convicted. (CR – 3RD Appeal, p. 61) The jury assessed punishment at 5 years confinement in the Texas Department of Criminal Justice – Institutional Division. (CR – 3RD Appeal, p. 78) Judgment was entered on the jury's verdict on April 3, 2014. (CR – 3RD Appeal, pp. 80 – 82) The trial court certified Petitioner's right to appeal on the same day. (CR – 3RD Appeal, p. 83)

On April 15, 2014, Petitioner filed his Notice of Appeal to the Ninth Court of Appeals. (CR – 3RD Appeal, p. 88)

On December 10, 2014, the Ninth Court of Appeals denied Petitioner relief and affirmed the trial court.  On January 5, 2015, Petitioner filed his Motion for Extension of Time.  On January 14, 2015, this Honorable Court granted his Extension of Time until February 9, 2015.  This Petition is timely filed.

## QUESTIONS OR GROUNDS FOR REVIEW

Petitioner presents the following questions or grounds for discretionary review.

**QUESTION NO. ONE:** Is the evidence legally sufficient to support the Petitioner's conviction?

**QUESTION NO. TWO:** When a judge pre-judges a defendant's guilt, is the defendant thereby denied the fair, neutral and impartial magistrate that he is guaranteed under Amend. I, V and XIV, U.S. Constitution?

**QUESTION NO. THREE:** Are Rule 18a(a)(3) and 18a(j)(1)(A), Texas Rules of Civil Procedure unconstitutional as depriving a criminal defendant of Due Process when the evidence of the judge's prejudgment of guilt is placed in orders in the case and the defendant is denied immediate appellate review of the denial of his motion to recuse?

The relevant pages of the record are: CR - 1ST Appeal, pp. 13, 24 – 34, 35, 38, 40 – 41, and 86; CR - 3RD Appeal, pp. 6, 80 - 83; and the following pages from the Reporter's Record: RR, Vol. 3, pp. 71; 87; 89 – 90; 92 – 94; Vol. 4, pp. 59; 67; 78 – 79; 81 – 82; 102; and 111.

## STATEMENT OF FACTS

The characterization of the facts set forth by the Court of Appeals correctly sets forth the relevant facts relating to Petitioner's conviction except that the Court of Appeals ignored that there is no evidence that Petitioner ever sought to meet with K.E. or for K.E. to meet with him, for any purpose.[1]

## STANDARD OF REVIEW

### LEGAL SUFFICIENCY REVIEW

When reviewing the legal sufficiency of the evidence to support a

---

[1]    Entire C.R. and entire R.R.. ⬆

conviction, this Court determines whether any *rational* trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2]   In conducting its review, the Court assesses all of the evidence in the light most favorable to the prosecution.[3] This Court must presume that the trier of fact resolved any conflicting inferences in favor of the prosecution and defer to that resolution.[4]

The Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution requires that a criminal conviction be supported not only by proof beyond a reasonable doubt regarding every essential element of a crime, but that such a determination be made by a rational trier of fact.[5] After giving "proper deference" (and not total deference) to the role of the trier of fact, an appellate court must "uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential

---

2    *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009) (emphasis added) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); *Carlsen v. State*, 654 S.W.2d 444, 448 (Tex. Crim. App. 1983) (*opinion on rehearing*); *Prible v. State*, 175 S.W.3d 724, 729-730 (Tex. Crim. App. 2005).

3    *Id.* (citing *Jackson*, 443 U.S. at 319).

4    *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 326).

5    U.S. Const. Amend. V;  U.S. Const. Amend. XIV; *Laster v. State*, 275 S.W.3d  at 517; *Jackson v. Virginia*, 443 U.S. at 316-319.

element."[6]

Although based upon a review of the facts, review of the legal sufficiency of evidence is a determination of law.[7] An appellate court must always address challenges to the sufficiency of the evidence.[8] Such a review must be conducted when a legal sufficiency challenge is raised, even if the conviction must be reversed on other grounds, because a finding that the evidence is legally insufficient to support the conviction prevents a retrial under the double jeopardy clause of the Fifth Amendment.[9] Should an appellate court find that the verdict is contrary to the evidence presented at trial, the court is empowered to reverse the conviction and enter a judgment of acquittal.[10]

Evidence is legally sufficient only if the state has affirmatively proven each of the essential elements of the offense.[11] The State's case falls short if

---

[6] ***Laster v. State***, 275 S.W.3d at 518, *citing **Narvaiz v. State***, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992); ***Brooks v. State***, *Id.* at 902 n.1. ⏏

[7] ***Allen v. State***, 651 S.W.2d 267, 269-270 (Tex. Crim. App. 1983). ⏏

[8] ***Garza v. State***, 715 S.W.2d 642, 645 (Tex. Crim. App. 1986). ⏏

[9] ***Hudson v. United States***, 522 U.S. 93, 98-99 (1997); U.S. Const. Amend. V & XIV; ***Ortiz v. State***, 577 S.W.2d 246, 250 (Tex. Crim. App. 1979); ***Foster v. State***, 635 S.W.2d 710, 717 (Tex. Crim. App. 1982); ***McFarland v. State***, 930 S.W.2d 99, 100 (Tex. Crim. App. 1996). ⏏

[10] Tex. Code Crim. Proc. Art. 44.25 (2006); Tex. Rule App. Proc. 43.2(c) (1997). ⏏

[11] ***Isassi v. State***, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); ***Jackson v. Virginia***, 443 U.S. at 319; ***Adames v. State***, 353 S.W.3d 854, 859-860 (Tex. Crim. App. 2011). ⏏

there is a material variance between the indictment allegations and the proof at trial.[12]

When conducting a legal sufficiency review, a question for this Court is whether the trier of fact "got it wrong" because the verdict it renders is irrational considering the evidence that is presented.[13] As the following analysis will show, the case before this Court represents one such rare occurrence.

In **Brooks v. State**, this Court held that in conducting a legal sufficiency review, (1) reviewing courts are to review all of the evidence, and not just the evidence that favors the conviction, (2) in the light most favorable to the prosecution, and (3) affirm the conviction if the evidence is legally sufficient for a *rational* trier of fact, and not just *any* trier of fact, to find all of the elements beyond a reasonable doubt.[14] Questions that arise are: how much deference should a reviewing court give to the verdict, what is a "rational" trier of fact, and when this Court considers all of the evidence in the light most

---

[12]     **Gollihar v. State**, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001); **Johnson v. State**, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012). ▲

[13]     *See* **Laster v. State**, 275 S.W.3d at 517 (a legal sufficiency review "is restricted to guarding against the rare occurrence when a factfinder does not act rationally."). ▲

[14]     **Brooks v. State**, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) [Emphasis supplied] ▲

6

favorable to the verdict, was the trier of fact *rational* in finding guilt beyond a reasonable doubt?

In ruling that a "great amount of deference" must be given to the verdict of the trier of fact, this Court acknowledged that the Court never previously stated precisely how much deference it must give to the verdict of the trier of fact, and especially to the trier of fact's credibility and weight determinations.[15] Further, "total deference" to the trier of fact's credibility and weight determinations is **not** required.[16] In fact, this Court rejected the suggestion from the dissenting opinion in ***Lancon v. State***, 253 S.W.3d 699, 707-709 (Tex. Crim. App. 2008), that "total deference" is the standard.[17]

This Court also held that there is some evidence that a rational trier of fact cannot disregard or disbelieve: as provided above, the Court provides a hypothetical in which the witness identifies "A" as the robber even though the properly authenticated surveillance videotape of the event clearly shows that "B" committed the robbery.[18] Yet, the trier of fact convicts "A," and although it is within the trier of fact's prerogative to believe the convenience store clerk

---

15      ***Brooks v. State***, 323 S.W.3d at 900.

16      *Id.* at 902 n.19 (emphasis added).

17      *Id.*

18      ***Brooks v. State***, *Id.* at 906-907.

7

and disregard the video, based on all the evidence, the trier of fact's finding of guilt is not a rational finding.[19]

How did the trier of fact convict "A" against the irrefutable evidence contained on the video? The answer is that the trier of fact that found "A" guilty was not a "rational trier of fact."[20]

No definition of "rational trier of fact," "rational jury," or "rational" is found within the Texas Penal Code or the Texas Code of Criminal Procedure. When this is the case, all words, phrases and terms used in the Code are to be taken and understood in their usual acceptation in common language, except where specifically defined.[21] The definition of "rational" as accepted in common language is "logical, reasoned, agreeable to reason, reasonable, sensible, common sense.[22] Therefore, a "rational trier of fact" is one that is reasonable or one that exercises reason or sound judgment in reaching a verdict.

Finally, the standard of proof in circumstantial evidence cases is the same standard as used in "direct evidence" cases, and a reviewing court may

---

19      *Id.*

20      *Id.*

21      Tex. Code Crim. Proc. Art. 3.01 (2005).

22      *Concise Oxford American Thesaurus*, 674 (2006).

consider the existence of all alternative reasonable hypotheses in conducting such a review.[23]

## ARGUMENT AND AUTHORITY

All Argument and Authority advanced in support of each Issue is incorporated by reference in support of every other Issue.

**ISSUE NO. ONE RESTATED:** The evidence is legally insufficient to support Petitioner's conviction.

The statute under which Petitioner was indicted[24] requires the State to prove that he: "[K]nowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person." There was no evidence that Petitioner solicited anyone to meet him.

STATUTORY CONSTRUCTION:

The statute[25] speaks in terms of "solicits" a minor to "meet" with the intent that the minor will engage in sexual contact, etc.. Since the Legislature

---

23    ***Schexnider v. State***, 943 S.W.2d 194, 198 (Tex. App. – Beaumont 1997, no pet.); ***Wallace v. State***, 955 S.W.2d 148, 151 (Tex. App. – Beaumont 1997, no pet.); ***Smith v. State***, 961 S.W.2d 501, 504 (Tex. App. – San Antonio 1997); ***Richardson v. State***, 973 S.W.2d 384, 385 (Tex. App. – Dallas 1998, no pet.).

24    § 33.021(c), Texas Penal Code (2011).

25    § 33.021(c), Texas Penal Code (2011).

9

did not define any of these words, they each have their ordinary meaning.[26]

Solicit means to seek for (something) by entreaty, earnest or respectful request, formal application, etc.; to entreat or petition; to seek to influence or incite to action, especially unlawful or wrong action; to offer to have sex with in exchange for money.[27] Entreat means to ask (a person) earnestly; beseech; implore; beg.[28] Indeed, this Court once noted that "Webster defines "solicit" as meaning "to ask earnestly, to endeavor to obtain by asking," etc."[29]

"Meet" is a verb that means to join at an agreed or designated place or time.[30]

**THE EVIDENCE DOES NOT SUPPORT A CONVICTION:**

In over six months of searching 7,000+ text messages, no one ever found a single text message where Petitioner asked to meet K.E. or for K.E. to

---

[26]     *See **FKM P'ship, Ltd. v. Bd. of Regents of the Univ. of Houston Sys.***, 255 S.W.3d 619, 633 (Tex.2008) ("We use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired, but otherwise, we construe the statute's words according to their plain and common meaning unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results.") ▲

[27]     Source: Random House Dictionary, © Random House, Inc. 2014. ▲

[28]     Source: Random House Dictionary, © Random House, Inc. 2014. ▲

[29]     ***Truesdale v. State***, 296 S.W. 320, 321 (Tex. Crim. App. 1927). ▲

[30]     Source: Random House Dictionary, © Random House, Inc. 2014. ▲

meet him for the purpose of anything, much less having sex.[31]

Petitioner was charged with an offense that was alleged to have occurred on or about June 2, 2013. The State introduced many text messages that Petitioner exchanged with K.E. in 2012 and early 2013, many of which appeared to be salacious, vulgar, inappropriate or sexually explicit. But not illegal because this Court declared § 33.021(b), Texas Penal Code (2011) unconstitutional.[32] Therefore, communicating in a sexually explicit manner with a minor, even if with the intent to arouse or gratify the sexual desire of any person, is legal.

So, no matter how salacious, vulgar, inappropriate or sexually explicit any of the text messages that Petitioner sent before June 2, 2013, may have been – if one completely discounts the explanations given therefor by K.E. – they are not illegal, as acknowledged by several State witnesses.[33] Neither do they constitute a violation of the statute.[34]

Which brings us to the night of June 2, 2013. At 21:06 Petitioner sent

---

[31]     RR, Vol. 3, p. 92, l. 13 – p. 93, l. 24. ▲

[32]     *See **Ex parte Lo**,* 424 S.W.3d 10 (Tex. Crim. App. 2013). ▲

[33]     *See, e.g.,* RR, Vol. 3, p. 71; Vol. 4, p. 59, ll. 1 – 4 and ll. 15 – 19. ▲

[34]     § 33.021(c), Texas Penal Code (2011). ▲

11

a text: "Is your quickly (sic) done? Time to get back."[35] It is undisputed that K.E. had left the party. It is important to note that this text message says nothing about meeting, for anything. And the law will not presume that Petitioner was engaging in illegal conduct by sending this text message.[36]

Almost two hours later,[37] a text message is sent from Petitioner's phone to K.E. that reads: "I. need then & sick (sic) me you will love, where you are! Suck me!"[38] Nowhere in that text message does the sender solicit K.E. to meet the sender of the text.

A text message that was sent almost two hours before, stating "Time to get back."[39] is not a solicitation to meet, for any purpose. It is the admonition of a parent to a 16-year-old sexually promiscuous daughter to return to the party, where her parents can keep their eye on her. No more, no less. And that fact was acknowledged by K.E., herself.[40]

The subsequent text message, sent almost two hours later, does not

---

35    RR, Vol. 4, p. 10, l. 22 – p. 11, l. 1. ▲

36    *See, **Boston v. Lecraw***, 58 U.S. 426, 435 (1856). ▲

37    *See* State's Exhibit A. ▲

38    RR, Vol. 4, p. 12, ll. 11 – 12. ▲

39    RR, Vol. 4, p. 10, l. 22 – p. 11, l. 1. ▲

40    RR, Vol. 4, p. 102, ll. 16 – 23. ▲

12

change that fact, regardless of whether the sender of the text message knew that K.E. was at the same party as the sender.

And while the offensive text message[41] was found on Petitioner's phone, it is undisputed that he was sharing his phone with college-age students at the party, any one of whom could have sent the message. The mere presence of the text on his phone and Petitioner's mere presence at the home does not establish Petitioner's guilt as a party to the offense.[42]

As this Court noted recently, "...sometimes appellate review of legal sufficiency involves simply construing the reach of the applicable penal provision in order to decide whether the evidence, even when viewed in the light most favorable to conviction, actually establishes a violation of the law."[43] As the analysis here has shown, the case before this Court represents one such occurrence. In short, the evidence is legally insufficient to support Petitioner's conviction and the conviction must be reversed and an acquittal ordered.

**ISSUE NO. TWO RESTATED:** When a judge pre-judges a defendant's guilt, the defendant is thereby denied the fair, neutral and impartial magistrate that he is guaranteed under Amend. I, V and XIV, U.S. Constitution.

---

[41]     RR, Vol. 4, p. 13, ll. 10 – 12. ▲

[42]     ***Thompson v. State***, 697 S.W.2d 413, 417 (Tex. Crim. App.1985). ▲

[43]     ***Delay v. State***, 443 S.W.3d 909, 912-913 (Tex. Crim. App. 2014).   ▲

In simplest terms, before hearing any evidence, can a judge ever refer to a complainant as a victim without thereby prejudging the defendant's guilt?

In denying relief, the Court of Appeals relied on the trial judge using a pre-printed form that "includes no factual findings."[44] But this analysis misses the mark.

### CONSTRUCTION OF ORDER:

An order is a command, direction, or decision on a collateral or intermediate point in a case, that is indeterminative of the main issue.[45] A court acts by and through its orders and not otherwise.[46] The Ancillary Conditions of Bond was an order. (Appendix 2)

The same rules of interpretation apply in construing the meaning of court orders as in ascertaining the meaning of other written instruments: the entire contents of an instrument and the record should be considered in construing the meaning of a court order or judgment, and the order is to be read as a whole.[47] If a court order is unambiguous, the court of appeals must

---

[44]     *Ex parte Victorick*, 2014 WL 6984140 at * 7. ▲

[45]     *Halbert v. Alford*, 16 S.W. 814 (Tex. 1891). ▲

[46]     *City of Hurst v. City of Colleyville*, 501 S.W.2d 140, 143 (Tex. Civ. App.—Fort Worth 1973, writ ref'd n.r.e.). ▲

[47]     *Surgitek, Bristol–Myers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999) ▲

construe the order in light of the literal meaning of the language used.[48]

**PREJUDGMENT OF GUILT:**

Judge Seiler signed Ancillary Conditions of Bond on August 30, 2013 and on November 14, 2013.[49]  Specific reference is made to ¶¶ 15, 16 and 17, thereof and the word, "victim" within each paragraph.

In each of the Ancillary Conditions of Bond, Judge Seiler used the term, "victim," on three separate occasions. Moreover, Judge Seiler referred to the "victim's family" in each of the foregoing paragraphs.

This is important because the word, "victim," is defined in the Code of Criminal Procedure  as:

> "... **a person who is the victim of the offense of sexual assault**, kidnapping, aggravated robbery, trafficking of persons, or injury to a child, elderly individual, or disabled individual or **who has suffered personal injury or death as a result of the criminal conduct of another.**"[50]

Or as:

> "(A) an individual who:
> (I) suffers personal injury or death as a result of **criminally**

---

[48]     ***Barnard v. Barnard***, 863 S.W.2d 770, 772 (Tex. App.—Fort Worth 1993, no writ).

[49]     CR., Vol. 1, pp. 13 and 48 (Appendix 2)

[50]     Tex. Crim. Pro. Art. 56.01(3) (2006). [Emphasis supplied]

**injurious conduct** …"[51]

Even if one does not use the statutory definitions, in ordinary parlance, victim means a person harmed by a crime, tort, or other wrong.[52]

The fact that this was a pre-printed form that was signed should not change anything.  Judge Seiler could have interlineated the word, alleged, before each of the uses of the word, victim.  He did not do so.

So, before he had heard *any* evidence in any case, Judge Seiler determined that K.E. had been harmed by a crime as evidenced by his signature on the Ancillary Conditions of Bond.  This was a pre-judgment of Petitioner's guilt.

**DUE PROCESS CONCERNS:**

Petitioner's right to a neutral and impartial judge is a First Amendment right.[53] "A fair trial in a fair tribunal is a basic requirement of due process."[54] Due process guarantees a defendant the right to a hearing before a "neutral

---

[51]    Tex. Crim. Pro. Art. 56.32(a)(11)(A)(I) (2006). [Emphasis supplied] ▲

[52]    Source: Black's Law Dictionary (9th ed. 2009). ▲

[53]    *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *Ward v. Village of Monroeville*, 409 U.S. 57, 61 (1972); *Ryland v. Shapiro*, 708 F.2d 967, 971 - 72 (5th Cir. 1983). ▲

[54]    *In re Murchison*, 349 U.S. 133, 136 (1955). ▲

16

and detached hearing body."[55]  A "neutral and detached" decision maker does not prejudge evidence he has not yet seen.[56] The denial of an impartial judge is a denial of Fourteenth Amendment Due Process rights.[57]

The First, Fifth and Fourteenth Amendments established a constitutional floor of a fair trial, before a judge with no actual bias against the defendant, or interest in the outcome of his particular case.[58]

The question is, was Judge Seiler not impartial?[59]  If Judge Seiler was not impartial, then this is a constitutional violation that is not subject to the "harmless-error" analysis but is instead a structural defect "affecting the framework within which the trial proceeds."[60] The Supreme Court has observed:

---

[55]     *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). ▲

[56]     *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir.1990). ▲

[57]     *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986), *citing, inter alia, Tumey v. Ohio*, 273 U.S. 510 (1927); *Ward v. Village of Monroeville*, 409 U.S. 57 (1972); and *In re Murchison*, 349 U.S. 133 (1955). ▲

[58]     *Bracy v. Gramley*, 520 U.S. 899, 904-5 (1997).  *See Gonzales v. Johnson*, 994 F.Supp. 759, 763 (N.D.Tex. 1997)("Fundamental component of due process is right to a hearing before impartial decision-maker who does not prejudge the evidence and who cannot say, with utter certainty, how he will assess evidence he has not yet seen.", *citing Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir.1990)). ▲

[59]     *Tumey v. Ohio*, 273 U.S. 510 (1927).  ▲

[60]     *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991). ▲

17

"A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. * * * This Court has said, however, that 'Every procedure which would offer a possible temptation to the average man as a judge * * * not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law.' "[61]

Such it was with Judge Seiler. Especially when the prosecutor and the witness referred to K.E. as the victim, counsel for Petitioner objected and moved to have the jury instructed to disregard. But Judge Seiler refused to rule on counsel's objection and refused to instruct the jury to disregard.[62]

### RULE 18B REQUIRED RECUSAL:

Rule 18b(b), Tex. R. Civ. P., makes it mandatory for a judge to recuse when: (1) the judge's impartiality might reasonably be questioned; (2) the judge has a personal bias or prejudice concerning the subject matter or a party....

No defendant should be required to engage in sophistry by assuming that a judge is not biased against him who, before hearing any evidence, determines that there is a victim. Criminal defendants are entitled to be tried "[W]ith assurance that the arbiter is not predisposed to find against him."[63]

---

[61] *In re Murchison*, 349 U.S. 133, 136 (1955).

[62] RR, Vol. 3, p. 124, l. 25 – p. 125, l. 22.

[63] *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980).

18

Using terms such as "victim" and permitting the prosecutor to refer to K.E. as the victim,[64] allows the focus to shift to the accused rather than remain on the proof of every element of the crime alleged by the complainant. A defendant is presumed to be innocent of the charges against him.[65] "The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice."[66] But Judge Seiler took away that presumption when he used and allowed the use of the term, "victim."

Again, by using the word, "victim," Judge Seiler had already determined that a crime occurred and had, thereby, prejudged Petitioner's guilt. This denied Petitioner his constitutionally guaranteed "neutral and impartial" judge and deprived Petitioner of his First, Fifth and Fourteenth Amendment rights. He was required to recuse himself.

### CONCLUSION:

Alternatively, because Judge Seiler prejudged Petitioner's guilt, this Court should reverse the conviction and remand for a new trial before a different judge, one who has not prejudged Petitioner.

---

[64]     RR, Vol. 3, p. 124, l. 25 – p. 125, l. 22. ⊟

[65]     ***Blue v. State***, 41  S.W.3d 129 (Tex. Crim. App. 2000). ⊟

[66]     ***Estelle v. Williams***, 425 U.S. 501, 503 (1976). ⊟

**ISSUE NO. THREE:** Rules 18a(a)(3) and 18a(j)(1)(A), T.R.C.P. are unconstitutional as depriving a criminal defendant of Due Process when the evidence of the judge's prejudgment of guilt is placed in orders in the case and the defendant is denied immediate appellate review of the denial of his motion to recuse.

As set forth in Issue Two, every criminal defendant is entitled to a trial before a judge who has not prejudged the evidence, or who has no actual bias against him.

But through the simple expedient of placing the evidence of that prejudgment or bias into an order, the judge forces a criminal defendant into a trial before him, delaying any review until after final judgment.

So, even if the defendant is African-American and the judge refers to the defendant, in an order, as the N-word, that is not grounds to recuse under Rule 18a(a)(3), T.R.C.P.. Any more than Judge Seiler's prejudgment of Petitioner's guilt is.

This even though Rule 18b(b)(1) and (2), T.R.C.P. mandate the judge's recusal in such a situation.[67]

Further, where as here, the only basis to have moved to recuse Judge Seiler was his rulings in the case(s) as contained in his orders, Rule 18a(a)(3), T.R.C.P., denies Petitioner the ability to challenge those rulings on appeal.

---

[67]    Must creates a condition precedent. § 311.016(3), Texas Gov't Code (2013) ▲

20

"The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society. (citation omitted) The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner."[68]

But Rules 18a(a)(3) and 18a(j)(1)(A), T.R.C.P. deny a criminal defendant Due Process by denying them the ability to recuse a judge whose rulings evidence a prejudgment of guilt or a bias against him or both, and by denying them an appellate review of the denial of the motion to recuse. Should this Court hold that a criminal defendant can raise this issue by appeal after conviction, that does not affect the analysis. Why? Because the defendant will have been forced, as was Petitioner, to a trial before a judge who has prejudged his guilt. And justice delayed is justice denied.[69]

**CONCLUSION:**

This Court should hold that Rules 18a(a)(3) and 18a(j)(1)(A), T.R.C.P., deny a criminal defendant Due Process and are, therefore, unconstitutional.

## CONCLUSION AND PRAYER

---

[68]     ***Mathews v. Eldridge***, 424 U.S. 319, 333 (1976), citing  ***Armstrong v. Manzo***, 380 U.S. 545, 552 (1965). ▲

[69]     ***Ex parte Briseño***, 135 S.W.3d 1, 5 (Tex. Crim. App. 2004). ▲

For the above and forgoing reasons, Petitioner respectfully prays that this Court reverse the judgment of the trial court and order an acquittal entered. In the alternative, this Court should reverse and remand for a new trial in front of a different judge.  In addition, this Court should declare Rules 18a(a)(3) and 18a(j)(1)(A), Texas Rules of Civil Procedure unconstitutional. Petitioner prays for general relief.

Respectfully submitted,

By: /s/ L.T. Bradt
L.T. "Butch" Bradt #02841600
14015 Southwest Freeway, Suite 4
Sugar Land, Texas 77478-3500
(281) 201-0700
Fax: (281) 201-1202
ltbradt@flash.net
Attorney for Petitioner,
David Lee Victorick

## CERTIFICATE OF SERVICE

I, the undersigned attorney, in accordance with the Rule 9.5, T.R.A.P., certify that a true and correct copy of the foregoing Petition was delivered to:

Honorable Brett Ligon, District Attorney
William Delmore, Ass't District Attorney
207 W. Phillips, 2nd Floor
Conroe, Texas  77301
bill.delmore@mctx.org

Postconviction Litigation Division
Office of the Attorney General

P.O. Box 12548
Austin, Texas 78711-2548
const_claims@texasattorneygeneral.gov

State Prosecuting Attorney
P.O. Box 13046
Austin, Texas 78711-3046
information@spa.texas.gov

on February 5, 2015.

/s/ L.T. Bradt
L.T. Bradt


## CERTIFICATION OF COMPLIANCE

This is to certify that, using the word count feature of WordPerfect X7, the total number of words in the Petition is 4328, *except* in the following sections: caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of questions presented, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix. This document also complies with the typeface requirements because it has been prepared in a proportionally-spaced typeface in 14-point Georgia and the footnotes are in a proportionally-spaced typeface in 12-point Times New Roman.

/s/ L.T. Bradt
L.T. Bradt

# APPENDIX

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-14-00112-CR**
**NO. 09-14-00190-CR**
_____

**EX PARTE DAVID LEE VICTORICK**

**and**

**DAVID LEE VICTORICK, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 13-11-12323 CR**
_____

**OPINION**

This matter involves two appeals filed by David Lee Victorick relating to his

indictment and subsequent conviction for online solicitation of a minor.[1] *See* Tex.

---

[1]We have considered three related matters filed by Victorick. Initially, we dismissed a petition for a writ of mandamus wherein Victorick sought to compel the presiding administrative judge to grant Victorick's motion to recuse the trial

Penal Code Ann. § 33.021(c) (West 2011). On March 7, 2014, the trial court denied Victorick's pre-trial application for writ of habeas corpus asserting a claim of double jeopardy. Victorick filed a notice of appeal and requested that his trial be stayed pending the resolution of Appeal No. 09-14-00112-CR, but this Court denied the motion to stay. Victorick was tried, convicted, and sentenced to five years of imprisonment. Victorick filed a notice of appeal of the final judgment, docketed in Appeal No. 09-14-00190-CR. We affirm the order denying the application for a writ of habeas corpus and the judgment of conviction.

## ISSUES

Victorick presents two issues in Appeal No. 09-14-00112-CR (the pre-trial request for habeas relief). First, he contends a bond order that issued after his arrest

---

judge. *See In re Victorick*, No. 09-13-00483-CR, 2013 WL 5969469, at *1 (Tex. App.—Beaumont Nov. 6, 2013, orig. proceeding) (mem. op., not designated for publication). Next, we denied a petition for a writ of mandamus and prohibition filed by Victorick to compel the trial court to stay the trial pending the resolution of his appeal of the trial court's denial of a pre-trial habeas application challenging the facial constitutionality of the statute creating the offense for which he was indicted. *See In re Victorick*, No. 09-13-00550-CR, 2013 WL 6885130, at *1 (Tex. App.—Beaumont Dec. 30, 2013, orig. proceeding, [leave denied]) (mem. op., not designated for publication). Finally, we affirmed the trial court's denial of Victorick's facial challenge to the constitutionality of Texas Penal Code section 33.021(c). *See Ex parte Victorick*, No. 09-13-00551-CR, 2014 WL 2152129, at *1 (Tex. App.—Beaumont May 21, 2014, pet. ref'd) (mem. op., not designated for publication). In the habeas appeal now before us, we granted Victorick's motion to take judicial notice of the clerk's record filed in Appeal No. 09-13-00551-CR. *See Turner v. State*, 733 S.W.2d 218, 223 (Tex. Crim. App. 1987).

2

on a previous indictment, which did not go to trial, constitutes punishment under the Fifth Amendment's Double Jeopardy Clause because the bond contained oppressive and onerous conditions that infringed upon his constitutional rights. Second, Victorick contends the oppressive and onerous conditions of his pre-trial bond on the indictment under which he was tried constitute punishment for double jeopardy purposes. In a motion to dismiss and with a suggestion of mootness, the State argues that Victorick's conviction mooted the appeal of the denial of pre-trial habeas relief.

Victorick presents three issues in Appeal No. 09-14-00190-CR (appeal of his conviction). First, he challenges the legal sufficiency of the evidence to support his conviction. Second, he contends he was deprived of an impartial magistrate. Third, Victorick contends the procedural rules that apply to recusal proceedings deprived him of due process because the rules do not provide for an interlocutory appeal.

INDICTMENT AND CONVICTION

The State initially indicted Victorick for online solicitation of a minor under subsection (b)(1) of section 33.021 of the Penal Code. *See* Tex. Penal Code Ann. § 33.021. After subsection (b)(1) was found to be unconstitutional by the Texas Court of Criminal Appeals in *Ex parte Lo*, Victorick was re-indicted under subsection (c) of section 33.021 for knowingly soliciting a fifteen year old girl to meet him with the intent that she engage in sexual contact, sexual intercourse, or

3

deviate sexual intercourse with him. *See* 424 S.W.3d 10, 27 (Tex. Crim. App. 2013). Victorick entered a not guilty plea and a jury found the appellant guilty as charged, and assessed his punishment at imprisonment for five years.

MOOTNESS

Before we address Victorick's appellate issues we consider the State's argument that Victorick's appeal of the denial of the pre-trial request for habeas relief is moot. As a general rule, a habeas appeal relating to pre-trial bail is mooted by the subsequent conviction of the defendant because upon his conviction the habeas applicant is no longer being subjected to pre-trial confinement. *See e.g., Martinez v. State*, 826 S.W.2d 620, 620 (Tex. Crim. App. 1992). Unlike a habeas claim concerning pre-trial bail in which the applicant seeks relief from an unconstitutional pre-trial confinement, if he is correct regarding his double jeopardy argument, Victorick may be entitled to relief from the sentence imposed in the judgment of conviction that has also been appealed to this Court. Therefore, Victorick's pre-trial request for habeas relief is not necessarily mooted by his conviction.

DOUBLE JEOPARDY CLAIM

The indictment accusing Victorick of online solicitation of a minor under section 33.021(c) of the Texas Penal Code alleged, in part, that Victorick, on or about June 2, 2013, did "knowingly solicit by text message, K.E., a minor, to meet

4

the defendant, with the intent that K.E. would engage in sexual contact and sexual intercourse and deviate sexual intercourse with the defendant[.]" After indictment, Victorick filed an application for writ of habeas corpus in which he alleged that he was being illegally confined because "[t]he Court has set conditions of bond that are not only oppressive, they have denied him constitutionally-guaranteed rights." Victorick alleged that "Double Jeopardy forbids his trial on the present indictment." Victorick's petition for habeas relief contends that subjecting him to a trial and potential conviction and sentence for a second degree felony would violate the Double Jeopardy Clause's prohibitions against multiple punishments because he had already been subjected to punishment within the scope of the Double Jeopardy Clause by conditions of his bond that prohibited him from: (1) possessing any firearms; (2) contacting the alleged victim's family; (3) going within 100 yards of the residence of the alleged victim; (4) contacting any child under seventeen years of age; or (5) having any contact with any computer or internet connection. Victorick argues that the conditions of his bond effectively denied him his right to bear arms, to associate with his wife, to attend church, to move about freely and peaceably in public places, and to work. No evidence was offered in the pre-trial habeas hearing. The trial court denied the application.

The Fifth Amendment states that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb. . . ." U.S. CONST.

5

amend. V. Victorick argues that placing him on bond under conditions that he contends are oppressive and onerous constitutes punishment for Fifth Amendment double jeopardy purposes. Citing *United States v. Jorn*, Victorick contends that judicial overreaching triggers double jeopardy protections. *See* 400 U.S. 470, 483-84 (1971) (plurality op.). *Jorn* held the Double Jeopardy Clause barred a re-trial after the trial court *sua sponte* discharged the jury without manifest necessity for calling a mistrial and without considering granting a continuance. *Id.* at 487. *Jorn* was a successive prosecution case in which jeopardy attached with the seating of the jury in the first trial and terminated when the trial court discharged the jury; jeopardy would attach a second time with the seating of a new jury, thereby implicating the Fifth Amendment's protection against successive prosecution. *See id.* at 484.

Victorick argues the trial court erred in failing to apply the *Jorn* successive prosecution concept, notwithstanding the fact that jeopardy attached only once in his case. Victorick contends without citing any authority that by referring to the complaining witness as the "victim" in the order setting conditions of bond, the trial court determined that he had committed a crime and the entry of the order functioned as an adjudication of guilt. The law of this state is well settled that with respect to a jury trial, jeopardy attaches when the jury is empaneled and sworn, and for a bench trial jeopardy attaches when the defendant pleads to the charging

6

instrument. *See Ortiz v. State*, 933 S.W.2d 102, 105 (Tex. Crim. App. 1996) (The constitutional prohibition against double jeopardy does not apply until the defendant enters a plea before the trier of facts.). Jeopardy does not attach in a preliminary hearing regardless of what facts may be determined during the proceeding. *See id.*

Nevertheless, when the defendant has been subjected to a single trial, "the Double Jeopardy Clause 'prevent[s] the sentencing court from prescribing greater punishment than the legislature intended.'" *Ervin v. State*, 991 S.W.2d 804, 807 (Tex. Crim. App. 1999) (quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983)). Factors considered in determining legislative intent include whether two provisions imposing separate punishments are contained within the same statutory section, whether they are phrased in the alternative, whether they are named similarly, whether they have common punishment ranges, whether they have a common focus or gravamen, and whether that common focus tends to indicate a single instance of conduct, whether the elements that differ between them can be considered the same under an imputed theory of liability which would result in the offenses being considered the same under the *Blockburger* test, and whether there is legislative history articulating an interest to treat the offenses as the same or different for double jeopardy purposes. *Ervin*, 991 S.W.2d at 814 (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

7

The State cites cases from other jurisdictions, which hold that conditional pre-trial release cannot be considered punishment for purposes of the Double Jeopardy Clause because it serves a remedial rather than a punitive purpose and a bond condition is not based on a determination of guilt. *See State v. Torres*, 890 So.2d 292, 296 (Fla. Dist. Ct. App. 2d Dist. 2004) (conditions of pre-trial release requiring accused to attend sex offender treatment were not punitive and double jeopardy did not attach); *accord Parent v. State,* 900 So.2d 598, 599-600 (Fla. Dist. Ct. App. 2d Dist. 2004) (special conditions placed on pre-trial release of DUI defendant did not bar further prosecution under the double jeopardy clause); *Halikipoulos v. Dillion*, 139 F.Supp.2d 312 (E.D.N.Y. 2001) (pre-trial release condition requiring defendant to attend "stoplift" counseling program did not constitute punishment and court rejected double jeopardy argument). While not binding on this Court, the cases are instructive of the result reached in other jurisdictions.

In Texas, the Code of Criminal Procedure provides rules for fixing the amount of the bond and the conditions of bond. Tex. Code Crim. Proc. Ann. arts. 17.15 (West 2005), 17.40 (West Supp. 2014). "The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with." Tex. Code Crim. Proc. Ann. art. 17.15. In setting the amount of the bond, "[t]he power to require bail is not to be used as to make it an instrument of oppression." *Id.* The

8

magistrate considers "[t]he nature of the offense and the circumstances under which it was committed" and also considers "[t]he future safety of a victim of the alleged offense and the community. . . ." *Id.* In Texas, "a magistrate may impose any reasonable condition of bond related to the safety of a victim of the alleged offense or to the safety of the community." Tex. Code Crim. Proc. Ann. art. 17.40. Unlike the criminal offense of online solicitation of a minor that is contained within the Penal Code, the statutes that authorize a trial court to fix bail pending trial and to impose conditions on a defendant's pre-trial release on bail function to ensure the defendant's appearance at trial and to protect the community without requiring a finding of guilt. *Compare* Tex. Code Crim. Proc. Ann. arts. 17.15, 17.40, *with* Tex. Penal Code Ann. § 33.021(c). We conclude that the clear intent of the Legislature as demonstrated in the plain language contained in articles 17.15 and 17.40 was to permit a trial court to set reasonable conditions of bond as a requirement for pre-trial release and then to impose the penalty set out in the Penal Code for the offense if the defendant is later tried and convicted. *See Ervin*, 991 S.W.2d at 814.

Victorick argues that in his case, the trial court failed to follow the rules established by articles 17.15 and 17.40 of the Texas Code of Criminal Procedure and that the trial court imposed unreasonable conditions of bond. *See* Tex. Code Crim. Proc. Ann. arts. 17.15, 17.40. He argues that the conditions impacted his

freedoms as guaranteed by the Fifth Amendment to such a degree that he has been punished before trial for the acts alleged in the indictment. The proper method to challenge a punitive bail condition is by filing either a motion to reduce bail or an application for a writ of habeas corpus for a bail reduction. *See Stack v. Boyle*, 342 U.S. 1, 6 (1951) (the proper procedure for challenging bail as unlawfully fixed is by motion for reduction of bail); *Ex parte Young*, 257 S.W.3d 276, 278 (Tex. App.—Beaumont 2008, no pet.) (the accused may challenge the conditions attached to bail through a pre-trial writ of habeas corpus).

Victorick petitioned for pre-trial habeas relief, but he sought only relief from the indictment and did not seek habeas relief from the order setting ancillary conditions of bond. Furthermore, he submitted no evidence regarding the oppressive nature of the conditions of bond. During the hearing on his pre-trial habeas petition, the State argued that the bond conditions were reasonable because they related to safety of the victim and the community. Considering that the indictment accused Victorick of online solicitation of a member of his household, and the use of a computer, electronic or texting device, the trial court reasonably could have determined that temporarily prohibiting his use of the internet and contact with the victim's family was authorized by article 17.40, even though the conditions necessarily impaired Victorick's freedom to communicate electronically and to associate with his family. *See* Tex. Code Crim. Proc. Ann. art. 17.40.

Therefore, we conclude that the trial court did not err in denying the application for writ of habeas corpus. Accordingly, we overrule both issues raised by Victorick in Appeal No. 09-14-00112-CR.

SUFFICIENCY OF THE EVIDENCE

In Victorick's first issue in Appeal No. 09-14-00190-CR (appeal of his conviction), Victorick challenges the sufficiency of the evidence to support his conviction of online solicitation of a minor. A person commits the offense of online solicitation of a minor if the person "over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person." *See* Tex. Penal Code Ann. § 33.021(c). Victorick argues the evidence at trial was insufficient to prove beyond a reasonable doubt that he did "knowingly solicit by text message, K.E., a minor, to meet the defendant, with the intent that K.E. would engage in sexual contact and sexual intercourse and deviate sexual intercourse with the defendant," as alleged in the indictment. Victorick contends that "communicating in a sexually explicit manner with a minor, even if with the intent to arouse or gratify the sexual desire of any person, is legal." He argues the evidence is legally insufficient to establish he violated the statute because the State

11

failed to prove beyond a reasonable doubt that he solicited K.E. to meet him and that he acted with the intent that K.E. engage in sexual contact.

The "*Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In evaluating the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 902 n.19; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

The jury is the ultimate authority on the credibility of witnesses and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 894; *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). We give full deference to the jury's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. If the record contains conflicting inferences, we must presume that the jury resolved such facts in favor of the verdict and defer to that resolution. *Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also determine whether the necessary inferences are

reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton*, 235 S.W.3d at 778. We may not substitute our judgment concerning the weight and credibility of the evidence for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).

> Courts and juries no longer face the difficult task of excluding every reasonable hypothesis other than the defendant's guilt. Under the current standard of review, there is no reason to treat circumstantial evidence of an accused's mental state any differently than circumstantial evidence of other elements. Just as circumstantial evidence is reviewed under the same standard as direct evidence, circumstantial evidence of intent is reviewed under the same standard as circumstantial evidence of other elements.

*Laster v. State*, 275 S.W.3d 512, 521 (Tex. Crim. App. 2009). "As long as the verdict is supported by a reasonable inference, it is within the province of the factfinder to choose which inference is most reasonable." *Id.* at 523.

In 2013, Victorick was employed as a high school coach and teacher. A year before the events at issue in this appeal, Victorick's wife became concerned that Victorick might have developed a sexual attraction to K.E. His wife noticed that Victorick displayed a keen interest in the possibility that his step-daughter, K.E., might be sexually active and the wife observed what appeared to be inappropriate sexual remarks in text messages from Victorick to K.E. Victorick explained to his wife that he had been "referring to . . . basketball, teaching her how to shoot,

13

dribble better, things of that nature[]" and that is what he meant when he sent K.E. a text message saying that "he could show her things and do things that, you know, some of those boys couldn't." Mrs. Victorick believed her husband, but she put locks on K.E.'s door and she would stay up until Victorick went to bed "to make sure that he wasn't going in there and downloading from her phone[.]" There were times when Victorick was "acting like a jealous boyfriend[;]" for example, once he climbed a ladder to look into a neighboring cul-de-sac to observe K.E. and her boyfriend.

On the date of the offense, Victorick, his wife, and K.E. were attending a graduation party at a friend's home. Victorick was, according to his wife, "drinking excessively" at the party. After K.E. left the party and went to a nearby fast food restaurant with a boy, Victorick sent K.E. a text message asking, "Is your quickly done? Time to get back." K.E. responded, "I'm pretty sure all we did was go get ice cream." The exchange of messages between K.E. and Victorick continued as follows:

K.E.: We need water

Victorick: I.need then & sick me you willl love, where are you! Suck me!

K.E.: Never

Victorick: If you ever. You will h understand how good I I eat p[---]y, let me show you! You will. Love ir!!' Ask the others!!

14

K.E.: F[---] you

Victorick: Please let me eat you you will love, it quit f[---]ing, I love your, miore than you know!

K.E.: F[---]ing for

K.E.: Die[2]

K.E. showed the messages to Victorick's wife, who understood that it referred to oral sex. A few weeks thereafter, K.E. called 9-1-1 about a physical altercation she had with Victorick. During the call, K.E. told the dispatcher that Victorick grabbed her by her hair and shoved her into the furniture, and also that he was "trying to get me to do things with him . . . sexual things."

K.E. testified at trial that she did not believe Victorick was trying to have sex with her, and that she believed he could have sent the messages because he was trying to keep her from having sex with more people. She does remember, however, telling her mother that she was "creeped out" by her stepfather, and she agreed that she called 9-1-1. A clinical psychologist testified for the State. He stated that he had counseled hundreds of children who were victims of sexual abuse. With respect to the Victorick case, he observed the testimony of K.E., reviewed some but not all of the texts between Victorick and K.E, reviewed the statements given by K.E.'s mother and Victorick, and reviewed other items from

---

[2]We use brackets and dashes to note our omission of some letters due to the profane nature of the words.

15

the reports. Further, he testified that abusers often "groom" their victims "[t]o foster that dependence and to foster that trust so that they can not only abuse the child and have access to them, but to the extent that they do harm the child in some way, the child may not tell about it, may even have positive relationships toward the person related to ways that they've been manipulated." The psychologist stated that the testimony of K.E. that she did not want Victorick to get in trouble, or that she did not think the texts were intended to be sexual, or that she blamed herself, would be

> consistent with someone who has been groomed by a suspect, groomed to feel like, to the extent anything bad is happening, it's my fault, rather than the other person's fault, and groomed to take responsibility for that, rather than entertain the idea, which may be a hard idea to entertain, to the extent that a child wants to believe in their father and the goodness of their father and having a good relationship with the father, that can be a lot for a child to give up. And in some cases that I have worked on, they will try to deny or rationalize or even blame themselves for what's happening rather than believe that their father might be trying to hurt them.

A forensic examination of Victorick's phone revealed an exchange of thousands of messages between Victorick and K.E. prior to July 25, 2013. Included within the messages are statements that demonstrate Victorick's sexual interest in K.E.

In his brief on appeal, Victorick further argues that his communications before the date of the offense were not illegal, "no matter how salacious, vulgar,

16

inappropriate or sexually explicit any of the text messages that Mr. Victorick sent before June 2, 2013, may have been[.]" He argues that the text message sent from his phone when K.E. went to the fast food restaurant did not request that K.E. meet him. Victorick contends that his messages, which express a present desire to engage in oral sex, appear to have occurred after K.E. returned to the party because they were made after K.E. asked Victorick for water. The alleged presence of Victorick and K.E. being in the same building at the time Victorick sent the messages would not, however, negate the element of the offense that the person "knowingly solicits a minor to meet another person, including the actor" with the intent that the minor will engage in sexual contact. *See* Tex. Penal Code Ann. § 33.021(c). The jury could have reasonably concluded based upon the content of the messages, as well as the testimony and evidence in the record, that Victorick sent K.E. a text message that solicited K.E., a minor, to meet.

"Meet" is not defined in the statute. "Words not specially defined by the Legislature are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance." *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992). "Accordingly, when determining the sufficiency of evidence to support a jury verdict, reviewing courts must not employ definitions of relevant statutory words which are different or more restrictive than the jurors themselves were legally

17

entitled to use." *Id*. Among its commonly understood terms, "meet" means, "to come near or in touch with by approach from another direction" and "in the basic sense pertinent here, [usually] implies no more than to come into the presence or company of whether by chance or design[.]" WEBSTER'S THIRD NEW INT'L DICTIONARY 1404 (2002). The jury could, using the ordinary understanding of the word "meet," find that Victorick solicited K.E. to meet him, and further that Victorick asked the victim to engage in a sex act that required physical contact between them.

Victorick argues that the text message, "I.need then & sick me you willl love, where are you! Suck me!", does not "solicit" K.E. "Solicit" is not defined in section 33.021 of the Texas Penal Code, and could be understood by the jury by its commonly defined terms, which include, "to approach with a request or plea" and "to endeavor to obtain by asking or pleading[.]" WEBSTER'S THIRD NEW INT'L DICTIONARY 2169 (2002). "Suck" is also found in the dictionary, and includes the meaning, "to draw in the mouth over or around an object. . . ." *Id.* at 2283. The part of "me" to which Victorick referred could be understood by the jury to mean his genitals, especially in light of another communication from Victorick to K.E. in which Victorick suggested that they engage in oral sex. The jury could, using the ordinary understanding of the word "solicit," find that Victorick asked or pleaded with K.E. to engage in oral sex.

18

Victorick contends that the evidence is legally insufficient because the mere presence of the text on his phone does not prove that he sent the message because there were college-age students at the party and one of them could have sent the message. The officer who examined Victorick's phone testified that it was password-protected. It was reasonable for the jury to infer that Victorick sent the message. His wife saw him use the phone that night, and Victorick sent sexually explicit messages to K.E. on many other occasions.[3] Because the inference that it was Victorick that sent the message from his password-protected phone was reasonable, the State was not required to exclude the possibility that someone else at the party used Victorick's phone to send the messages to K.E. *See Laster*, 275 S.W.3d at 521, 523.

Viewing the totality of the evidence and inferences in a light most favorable to the verdict, the jury could have reasonably inferred that Victorick sent the messages to K.E. *See Hooper*, 214 S.W.3d at 13. We conclude that the evidence is legally sufficient to support the verdict. Accordingly, we overrule issue one.

---

[3]The testimony and evidence indicated that Victorick—a 58-year-old high school teacher and coach—spied upon K.E. when she was with her friends; he snuck into her room at night while she slept; he used the "notes" function of his cell phone to record his own thoughts regarding her sexual activity and to record his sexual attraction to her; and he sent many other text messages to K.E. that included requests to be permitted to perform what a jury could reasonably conclude were sex acts.

In his second issue in Appeal No. 09-14-00190-CR (appeal of his conviction), Victorick argues that the reference to the "victim" in the pre-trial order setting ancillary conditions of bond demonstrates that the trial judge pre-judged his guilt, and establishes that he was deprived of a fair and impartial tribunal, in violation of the Due Process Clause of the Fifth and Fourteenth Amendments. *See Tumey v. Ohio*, 273 U.S. 510, 523 (1927). "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955).

The trial court used a pre-printed form that contained several references to the "victim" and "the victim's family" which Victorick argues indicates that the trial court pre-judged his guilt before the trial. The document imposes conditions but includes no factual findings. The document was not prepared for use before the jury, nor is there any indication from the record that the pre-trial order setting ancillary conditions of bond was ever shown to the jury. Additionally, during the trial, when Victorick objected to the prosecutor's reference to the complaining witness as "the victim" the trial court sustained the objection and instructed counsel to use the phrase "alleged victim" and instructed the jury that "any time . . . prosecutor uses the word 'victim,' that you take it as alleged victim." Therefore, we conclude that the record does not support Victorick's claim that the trial court deprived him of the presumption of innocence. We overrule issue two.

In his third issue in Appeal No. 09-14-00190-CR (appeal of his conviction), Victorick challenges the constitutionality of the recusal procedure contained in Rule 18a(a)(3) and 18a(j)(1)(A) of the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 18a. Subsection (a)(3) of Rule 18a provides that a party may not seek recusal of the judge solely on account of the judge's rulings in the case in which his recusal is sought. *Id.* Subsection (j)(1)(A) states that an order denying a motion to recuse may be reviewed only for abuse of discretion on appeal from the final judgment. *Id.* Victorick argues that Rule 18a unconstitutionally denies a criminal defendant due process "[b]ecause the defendant will have been forced, as was Mr. Victorick, to a trial before a judge who has prejudged his guilt."

"Whenever we are confronted with an attack upon the constitutionality of a statute, we presume that the statute is valid and that the Legislature has not acted unreasonably or arbitrarily. [citation omitted] The burden rests upon the individual who challenges the statute to establish its unconstitutionality" as applied to him. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002) (citing to *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978)); *Wood v. State*, 18 S.W.3d 642, 650-51 (Tex. Crim. App. 2000). Victorick has not established that the trial court prejudged his guilt. Furthermore, Victorick has not shown that Rule 18a

21

is unconstitutional as applied to him or as applied to some hypothetical third party. Therefore, we overrule issue three.

CONCLUSION

Having overruled all of the issues that have been raised by the appellant in his appeals, we affirm the order denying the application for a writ of habeas corpus and we affirm the judgment of conviction.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on November 10, 2014
Opinion Delivered December 10, 2014
Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.

22

# IN THE NINTH COURT OF APPEALS

09-14-00190-CR

David Lee Victorick
v.
The State of Texas

On Appeal from the
435th District Court of Montgomery County, Texas
Trial Cause No. 13-11-12323 CR

## **JUDGMENT**

THE NINTH COURT OF APPEALS, having considered this cause on appeal, concludes that the judgment of the trial court should be affirmed. IT IS THEREFORE ORDERED, in accordance with the Court's opinion, that the judgment of the trial court is affirmed.

Opinion of the Court delivered by Justice Leanne Johnson

December 10, 2014

**AFFIRMED**

\*\*\*\*\*\*\*\*\*\*

Copies of this judgment and the Court's opinion are certified for observance.

Carol Anne Harley
Clerk of the Court

RECEIVED AND FILED
At 11 15 FOR RECORD
O'Clock A M.

AUG 30 2013

BARBARA GLADDEN ADAMICK
District Clerk
MONTGOMERY COUNTY TEXAS
By _____ Deputy

CAUSE NO. 13-08-09228-CR

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| V | § | MONTGOMERY COUNTY, TEXAS |
| David Lee Victorick | § | 435th JUDICIAL COURT |

## ANCILLARY CONDITIONS OF BOND

Conditions of bond are hereby ordered to apply to the bond posted by Defendant in the above-referenced cause. Defendant shall:

_✓_(1) Commit no offense against the laws of this State or any other State or the United States;

_✓_(2) Abstain from the use of alcohol or controlled substances, unless prescribed by a physician;

_✓_(3) Avoid injurious or vicious habits, including persons or places of disreputable or harmful character;

_✓_(4) Work faithfully at suitable employment as far as possible;

_✓_(5) Support his/her dependents;

_✓_(6) Remain within Montgomery County, Texas, unless given permission to leave therefrom by the Court or supervision officer;

_✓_(7) Submit to the Montgomery County Department of Community Supervision and Corrections (MCDCS) immediately following release from custody and submit to medical, chemical or other test or examination for the purpose of determining whether or not you are using or under the influence of alcohol, narcotic drugs or any controlled substance or marihuana. Defendant will continue to submit to continued random testing at his own expense at such time and testing may be requested by MCDCS. Any detection of alcohol or controlled substances will be a violation of Defendant's conditions of bond.

_____(8) Participate in alcohol/drug abuse evaluation and counseling as follows: PER PROBATION DEPT.;

_✓_(9) Permit the supervising officer to visit him/her at his/her home or elsewhere;

_✓_(10) Report monthly/weekly to the supervision officer as directed by the Judge or supervision officer and pay supervision fee of $40.00 per month to MCDCS;

_✓_(11) Observe a home curfew as follows: Remain in his/her residence between the hours of 10:00 p.m. and 6:00 a.m., subject to random telephone calls to ensure compliance;

_✓_(12) Notify MCDCS of any change of address, employment and/or telephone within three (3) days;

_____(13) Install a motor vehicle ignition interlock. Defendant shall comply with all terms of the installation order;

_✓_(14) Defendant shall not possess any firearm(s), unless you are a full-time paid peace officer;

_✓_(15) Defendant shall refrain from all association, contact, and communication, directly or indirectly, whether in person, by phone, by letter, or through a third party, with the victim or the victim's family or household unless authorized by the Court, Defendant's supervising officer, or court ordered treatment provider;

_✓_(16) Not go to or within 100 yards of the residence, place of employment, or business, or child-care facility or school of the victim or any member of the victim's family or household;

_✓_(17) Not engage in conduct directed toward the victim or any member of the victim's family or household, including following the person, that is reasonably likely to harass, annoy, alarm, abuse, torment or embarrass;

_____(18) Submit to a polygraph examination on a quarterly basis, at the direction of Defendant's supervising officer, at Defendant's expense, to determine if Defendant is abiding by the terms and conditions of bond;

_✓_(19) Other conditions: _Defendant shall have no access to any child under 17 years of age or any computer or internet connection._

SIGNED on __8\30\13__ .

_____
JUDGE PRESIDING
435TH DISTRICT COURT

_____        _____
SIGNATURE OF DEFENDANT                       ATTORNEY FOR DEFENDANT

I, Barbara Gladden Adamick, do hereby
Certify _1_ pages in Cause #13-08-09228-CR
as being a true and correct copy of the
Original Record now on file in the District
Clerk's Office of Montgomery County, Texas.

Witness My Official Seal of Office in Conroe, Texas
On This the _12_ Day of _December_ 2013

By: _____, Deputy

13

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| V | § | MONTGOMERY COUNTY, TEXAS |
| David Lee Victorick | § | 435th JUDICIAL COURT |

*RECEIVED AND FILED*
*At 10 O'Clock A.M.*
*NOV 19 2013*
*BARBARA GLADDEN ADAMICK*
*District Clerk*
*MONTGOMERY COUNTY TEXAS*
*By Deputy*

## ANCILLARY CONDITIONS OF BOND

Conditions of bond are hereby ordered to apply to the bond posted by Defendant in the above-referenced cause. Defendant shall:

_____✓(1) Commit no offense against the laws of this State or any other State or the United States;

_____✓(2) Abstain from the use of alcohol or controlled substances, unless prescribed by a physician;

_____✓(3) Avoid injurious or vicious habits, including persons or places of disreputable or harmful character;

_____✓(4) Work faithfully at suitable employment as far as possible;

_____✓(5) Support his/her dependents;

_____✓(6) Remain within Montgomery County, Texas, unless given permission to leave therefrom by the Court or supervision officer; *may live in Cypress with sister & travel to Harris Co. to*

_____✓(7) Submit to the Montgomery County Department of Community Supervision and Corrections (MCDCS) *visit* immediately following release from custody and submit to medical, chemical or other test or examination for *attorney* the purpose of determining whether or not you are using or under the influence of alcohol, narcotic drugs or any controlled substance or marihuana. Defendant will continue to submit to continued random testing at his own expense at such time and testing may be requested by MCDCS. Any detection of alcohol or controlled substances will be a violation of Defendant's conditions of bond.

_____✓(8) Participate in alcohol/drug abuse evaluation and counseling as follows: PER PROBATION DEPT.;

_____(9) Permit the supervising officer to visit him/her at his/her home or elsewhere;

_____✓(10) Report monthly/weekly to the supervision officer as directed by the Judge or supervision officer and pay supervision fee of $40.00 per month to MCDCS;

_____✓(11) Observe a home curfew as follows: Remain in his/her residence between the hours of 10:00 p.m. and 6:00 a.m., subject to random telephone calls to ensure compliance;

_____✓(12) Notify MCDCS of any change of address, employment and/or telephone within three (3) days;

_____(13) Install a motor vehicle ignition interlock. Defendant shall comply with all terms of the installation order;

_____✓(14) Defendant shall not possess any firearm(s), unless you are a full-time paid peace officer;

_____✓(15) Defendant shall refrain from all association, contact, and communication, directly or indirectly, whether in person, by phone, by letter, or through a third party, with the victim or the victim's family or household unless authorized by the Court, Defendant's supervising officer, or court ordered treatment provider;

_____✓(16) Not go to or within 100 yards of the residence, place of employment, or business, or child-care facility or school of the victim or any member of the victim's family or household;

_____✓(17) Not engage in conduct directed toward the victim or any member of the victim's family or household, including following the person, that is reasonably likely to harass, annoy, alarm, abuse, torment or embarrass;

_____(18) Submit to a polygraph examination on a quarterly basis, at the direction of Defendant's supervising officer, at Defendant's expense, to determine if Defendant is abiding by the terms and conditions of bond;

_____✓(19) Other conditions: *Defendant shall have no contact with any child under 17 years old age. or any computer or internet connection (pro)*

SIGNED on 11/19/13 .

_____
SIGNATURE OF DEFENDANT

JUDGE PRESIDING
435TH DISTRICT COURT

_____
ATTORNEY FOR DEFENDANT  *02841600*

**48**